**Brenda Kay WATT, Appellant (Plaintiff/Petitioner),**

v.

**Joseph Robert WATT, Appellee (Defendant/Respondent).**

No. 96–322.

Supreme Court of Wyoming.

Jan. 19, 1999.

Mark L. Hughes of Hughes Law Office, Sundance, for Appellant.

Dwight F. Hurich of Hurich Law Office, Gillette, for Appellee.

Representing Amicus Curiae, University of Wyoming Legal Services Program: Diana Stithem, Designated Faculty Supervisor; Angela Castro, Student Director; and David L. Delicath, Student Intern, University of Wyoming Legal Services Program, Laramie, Wyoming.

* Chief Justice at the time of oral argument; re-

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

THOMAS, Justice.

█ The question in this case is whether the discretion of the trial court to order a change in custody upon a material change of circumstances is circumscribed by a constitutional right of relocation. The mother, Brenda Kay Watt (Mrs. Watt), was granted primary care, custody, and control of the parties' three minor sons upon her divorce from the father, James Robert Watt (Mr. Watt). The divorce decree provided for an automatic change of custody from the mother to the father if the mother moved more than fifty miles from Upton. When Mrs. Watt was admitted to the graduate pharmacy program at the University of Wyoming, she discovered that she could pursue that opportunity only by moving to Laramie. She sought permission from the trial court to change her place of residence by more than fifty miles, and Mr. Watt then asked for a change in custody of their sons. The trial court, recognizing that the automatic change provision was improper, awarded custody of the three sons to the father, essentially applying the best interests of the children evaluation. Mrs. Watt appealed the Order Modifying Decree of Divorce entered in the trial court, which ordered the change in custody. We hold that not only does the ruling of the trial court constitute an abuse of discretion in light of earlier decisions of this Court, but it amounts to an infringement upon Mrs. Watt's constitutional right to travel. We reverse the Order Modifying Decree of Divorce entered in the trial court.

In her Brief of Appellant, Mrs. Watt initially raised this issue:

Did the trial court err as a matter of law in applying the law of Wyoming in this parent relocation case and was the trial court's decision to change custody due to the mother's move from Upton, Wyoming to Laramie, Wyoming to attend pharmacy school an abuse of the court's discretion.

In the Brief of Appellee, filed on behalf of Mr. Watt, the issue is stated in this way:

tired November 2, 1998.

Was there an abuse of discretion committed by the trial court when custody was modified, placing the children with the father upon the mother's relocation from the children's home to pursue her education?

Mrs. Watt, in her Supplemental Brief of Appellant, articulates these issues:

Issue No. 1: Does intrastate relocation or matters incident thereto tend to manifest a material change in circumstances sufficient to justify reopening a prior custody adjudication?

Issue No. 2: Does the Wyoming Constitution posit a fundamental right to travel which might be subject to impermissible infringement where intrastate relocation, or matters incident thereto, are determined to constitute a material change in circumstances sufficient to justify the reopening of a prior custody adjudication?

This Statement of the Issues is found in the Supplemental Brief of Appellee, filed for Mr. Watt:

A. May intrastate relocation of a parent, or factors relating to such a relocation, constitute a material change in circumstances sufficient to justify the reopening of a prior custody adjudication?

B. Is the right of travel a fundamental liberty interest protected by the Constitution of the State of Wyoming which would be unlawfully infringed were intrastate relocation of a parent, or factors relating to such a relocation, held to constitute a material change in circumstances sufficient to justify the reopening of a prior custody adjudication?

In the Amicus Curiae Brief of the University of Wyoming Legal Services Program, these issues are raised:

I. Is the right of travel a fundamental liberty interest protected by the Constitution of the State of Wyoming which would be unlawfully infringed were intrastate relocation of a parent, or factors relating to such a relocation, held to constitute a material change in circumstances sufficient to justify the reopening of a prior custody adjudication?

II. May intrastate relocation of a parent, or factors relating to such a relocation, constitute a material change in circumstances sufficient to justify the reopening of a prior custody adjudication?

In the Appellee's Reply to Amicus Curiae Brief of University of Wyoming Legal Services Program, Mr. Watt re-emphasizes his position that there must be a balance between a parent's right to travel and decisions involving the best interests of the child.

The Watts were married on June 4, 1983. Three sons were born to the parties: Douglas Allan Watt, born on June 12, 1985; Bryan Allan Watt, born on September 2, 1986; and Jason Allan Watt, born on November 25, 1987. On May 18, 1995, the Watts were divorced, and the divorce decree awarded primary custody of the three sons to Mrs. Watt. The divorce decree encompassed a finding that it was in the best interests of the children that the mother have primary custody, but only if the children remained with Mrs. Watt in the Upton area. It also included a provision that if Mrs. Watt moved more than fifty miles from Upton, custody automatically would be given to Mr. Watt. Mr. Watt was granted liberal visitation with the children, including two week nights each week, every other weekend, and significant time during school vacations.

After they were divorced, Mr. and Mrs. Watt continued to live in Upton. Their sons maintained close relationships with both of their parents, and all three continued to do well in school. Mr. Watt always exercised his visitation, and he coached the basketball and baseball teams on which the boys played. Both parents testified that they were able to cooperate well with respect to visitation, and, in some instances, Mrs. Watt and Mr. Watt have received more visitation than required by the divorce decree.

Mrs. Watt's financial situation was dramatically affected by the divorce. She testified that her income from her hair styling business decreased by one third from $15,000.00 a year to approximately $10,100.00. She attributed the diminution to the fact that Mr. Watt's large extended family stopped patronizing her business. Mr. Watt, voluntarily, took a new job that resulted in his income

being reduced from approximately $2,400.00 per month to approximately $1,100.00 per month. During the marriage, Mrs. Watt had taken college level classes, and she continued to do so after the divorce. She succeeded in securing enough prerequisites to permit her to apply to be admitted to the graduate pharmacy program at the University of Wyoming. According to her testimony, she believes that those who succeed in graduating from this program can earn between $50,000.00 and $60,000.00 per year in Wyoming.

In 1996, Mrs. Watt was accepted into the pharmacy degree program at the University of Wyoming, but she could only pursue that opportunity at the campus in Laramie. Mrs. Watt filed a Petition for Modification of Decree of Divorce Pursuant to Wyoming Statute § 20–2–113(a) and a Motion for Relief from Judgment and Order Pursuant to Rule 60(b)(5) and 60(b)(6) of the Wyoming Rules of Civil Procedure on June 20, 1996. She sought this relief so that she could take her three sons to Laramie with her. She found a home in Laramie; investigated the Laramie school programs and athletic programs; and arranged for child care. Mr. Watt objected to this change in residence and the relief sought by Mrs. Watt. He contended that it was not in the best interests of the children to change their residence from Upton, and he demanded that custody be awarded to him based upon the trial court's previous order for an automatic change in custody in the event Mrs. Watt should move more than fifty miles from Upton.

Mr. Watt asserted that his new job permitted him to spend more time with his three sons; both sets of grandparents were residents in Upton; the original divorce decree found that the parties had agreed that Upton was a good place to raise their three sons; and two of the three boys preferred to remain in Upton with their father. The hearing on the parties' motions was scheduled for September 12, 1996, and since that date was after the beginning of the school term, Mrs. Watt moved to Laramie in August to pursue her degree. She complied with the existing divorce decree by leaving the three boys in Upton with their father.

The hearing on the petitions and motions of the parties was conducted on September 12, 1996, and Mr. and Mrs. Watt both presented witnesses and testimony relating to the requested change of residence. Among other propositions, Mrs. Watt contended that the automatic change of custody provision was contrary to *Martin v. Martin,* 798 P.2d 321, 323 (Wyo.1990), in which the court held that a provision in a decree of divorce that would automatically change custody upon relocation of the custodial parent was speculative, and thus constituted an abuse of discretion. Following the hearing, the trial court made oral findings which had the effect of denying the relief sought by Mrs. Watt, and would change the primary custody of the three sons from Mrs. Watt to Mr. Watt with appropriate changes in visitation and child support. The formal order was entered on November 12, 1996. Subsequently, the trial court found that it had erred in including an automatic change in custody if Mrs. Watt moved more than fifty miles from Upton, and it refused to invoke the automatic provision. Nevertheless, the trial court ordered a change in primary custody from Mrs. Watt to Mr. Watt.

The trial court found the following factors established a material change in circumstance justifying its order:

a. It is important to the parents that their children be raised in the environs of Upton, Wyoming;

b. The extended family continues to be there for the children and continues to be active;

c. The extended family has expanded due to Mrs. Watt's parents' relocation to Upton, Wyoming;

d. Concern exists due to the [mother's] status as a student in a discipline that is a difficult undertaking and that such status will detract from her ability to rear the children;

e. No negative factors exist if the children remain in Upton, Wyoming where they are comfortable; and

f. The interests of the children are best served if they remain in Upton, Wyoming.

Mrs. Watt appeals from the Order Modifying Decree of Divorce entered on November 12, 1996.

 In seeking a modification of the custody provision of the divorce decree, Mr. Watt assumed the burden of establishing that a material and substantial change in circumstances had occurred, following the entry of the initial divorce decree, which outweighed societal interests in supporting the doctrine of res judicata. *Clark v. Alexander,* 953 P.2d 145, 150 (Wyo.1998); *Goody v. Goody,* 939 P.2d 731, 733 (Wyo.1997); *Semler v. Semler,* 924 P.2d 422, 424 (Wyo.1996); *Pinther v. Pinther,* 888 P.2d 1250, 1253 (Wyo.1995); *Nuspl v. Nuspl,* 717 P.2d 341, 345 (Wyo.1986). The standard applied upon review of a decision of a trial court with respect to a change in custody is the demonstration of a procedural error or an abuse of discretion. *Goody,* 939 P.2d at 733; *Combs v. Sherry–Combs,* 865 P.2d 50, 55 (Wyo.1993); *Martin,* 798 P.2d at 322. Recently, in *Vaughn v. State,* 962 P.2d 149, 151 (Wyo. 1998) (*quoting Martin v. State,* 720 P.2d 894, 897 (Wyo.1986)), we defined judicial discretion as being

> "a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Byerly v. Madsen,* 41 Wash.App. 495, 704 P.2d 1236 (1985)."

This definition follows upon one we have frequently quoted from *Martin,* 720 P.2d at 897:

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.

This definition found in *Martin* had its genesis in the Supreme Court of Washington when the court said:

> What is judicial discretion? Although it cannot be defined by a hard and fast rule, it means a sound judgment which is not exercised arbitrarily, but with regard to what is right and equitable under the circumstances and the law, and which is di-rected by the reasoning conscience of the judge to a just result.

*State ex rel. Clark v. Hogan,* 49 Wash.2d 457, 303 P.2d 290, 293 (1956). This language was modified slightly in *State ex rel. Carroll v. Junker,* 79 Wash.2d 12, 482 P.2d 775, 784 (1971), where the court said:

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.

This latter definition is the one quoted in *Byerly v. Madsen,* 41 Wash.App. 495, 704 P.2d 1236, 1238 (1985) that we have adopted through *Vaughn* and *Martin.*

 Sound exercise of discretion effectuates the rule of law, not the will of the judge. *Vanasse v. Ramsay,* 847 P.2d 993, 996 (Wyo.1993) (*quoting Federal Enter. v. Frank Allbritten Motors,* 16 F.R.D. 109, 112 (W.D.Mo.1954)). Discretion necessarily represents a choice on the part of the trial judge, but that choice is rarely unfettered. The trial judge is circumscribed by both the constitutions of Wyoming and the United States of America, the laws of the land, and the decisions of this Court. It is clear that a trial court cannot, in the exercise of its discretionary power, infringe upon constitutional rights enjoyed by the parties. Our task is to examine the record to determine whether the trial court reasonably could conclude from the evidence that a material and substantial change of circumstances occurred. *DJG v. MAP,* 883 P.2d 946, 947 (Wyo.1994) (*quoting Martinez v. State,* 611 P.2d 831, 838 (Wyo.1980)).

We have applied the abuse of discretion standard to the conclusion of a trial court that a substantial and material change of circumstances has occurred subsequent to the entry of the existing decree. *DJG,* 883 P.2d at 947. A review of our cases suggests we have upheld the decision of a trial court in the exercise of its discretion whether it found a substantial or material change in circumstances or whether it found there had not been a substantial or material change in circumstances. Nevertheless, we begin our re-

view of this aspect of the trial court's decision with *Love v. Love,* 851 P.2d 1283 (Wyo. 1993).

In *Love,* the mother planned to move to South Dakota to pursue her education and to find employment, and she sought to take her children with her. The father was opposed to the relocation of the children, asserting that it would upset and effectively destroy his weekend visitation. We upheld the exercise of discretion on the part of the trial court in allowing the relocation of the daughter, but acceded to the wishes of the son to stay in Sheridan with his father. We said:

> Where the issue is relocation of one of the parties, we must remember that the best interests of the child standard was applied at the time of the initial custody award. Therefore, our review looks more closely at balancing the continued rights of the parties with the best interests of the children as established at the time of divorce. We will consider the attributes and characteristics of the parents and children and how the children have fared under the original custody and visitation arrangement. We will consider also whether the relocating parent's motives for proposing the move are legitimate, sincere, in good faith, and whether reasonable visitation is possible for the remaining parent.

*Love,* 851 P.2d at 1287–88.

With respect to the best interests of the children, we adopted language from *Arquilla v. Arquilla,* 85 Ill.App.3d 1090, 41 Ill.Dec. 450, 407 N.E.2d 948, 950 (1980):

> "It would be incongruous for a court, when presented with a custodial order originally based upon the best interests of the child, to refuse to support the efforts of the custodial parent to maintain and enhance *their* standard of living, albeit in another jurisdiction. So long as the court is satisfied with the motives of the custodial parent in seeking the move and reasonable visitation is available to the remaining parent, *removal should be granted.*"

*Love,* 851 P.2d at 1288–89 (emphasis in original and added). We recognized that a " '[f]ather's change in visitation due to mother's relocation is unfortunate, but not an unusual

result of divorce.' " *Id.* at 1289. In this regard, we held that the trial court

> "should not insist that the advantages of the move be sacrificed and the opportunity for a better and more comfortable life style for the mother and children be forfeited solely to maintain weekly visitation by the father where reasonable alternative visitation is available and where the advantages of the move are substantial."

*Id.* (quoting *D'Onofrio v. D'Onofrio,* 144 N.J.Super. 200, 365 A.2d 27, 30, *aff'd,* 144 N.J.Super. 352, 365 A.2d 716 (1976)).

Relocation as a substantial and material change in circumstances was foreclosed by the decision in *Love.* Our decision established a strong presumption in favor of the right of a custodial parent to relocate with her children, assuming that the criteria articulated in *Love* are satisfied. After *Love,* we again held that a relocation, by itself, is not a substantial or material change in circumstances sufficient to justify a change in custody order. *Gurney v. Gurney,* 899 P.2d 52, 55 (Wyo.1995) (*citing Love,* 851 P.2d at 1288–89). *Love* and *Gurney* together capture a rule that a relocation by a custodial parent, where the motivation for the relocation is legitimate, sincere, in good faith, and still permits reasonable visitation by the non-custodial parent, is not a substantial and material change in circumstances. A trial court abuses its discretion in making a contrary ruling that such a move amounts to a substantial and material change in circumstances.

In this case, we also address potential constitutional implications relating to relocation by a custodial parent. The Supreme Court of the United States, in *Shapiro v. Thompson,* 394 U.S. 618, 629, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), said:

> [T]he nature of our Federal Union and our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement.

Even before the ratification of the Constitution of the United States, the Articles of Confederation provided that "the people of

each State shall have free ingress and egress to and from any other state * * *." Articles of Confederation, Art. IV, § 1 (1777). This principle encompasses the right of individuals "to migrate, resettle, find a new job, and start a new life * * *." *Shapiro,* 394 U.S. at 629, 89 S.Ct. 1322.

The right to travel is not specifically articulated in the Constitution of the United States. The Supreme Court of the United States never has definitively identified the exact source of the freedom to travel. It has been suggested that it originates in the commerce clause. *See Edwards v. People of State of California,* 314 U.S. 160, 173, 62 S.Ct. 164, 86 L.Ed. 119 (1941). It also may be derived from the privileges and immunities clause of the Fourteenth Amendment to the Constitution of the United States. *Edwards,* 314 U.S. at 183, 62 S.Ct. 164 (Jackson, J., concurring) ("it is a privilege of citizenship of the United States, protected from state abridgment, to enter any state of the Union, either for temporary sojourn or for the establishment of permanent residence therein and for gaining resultant citizenship thereof. If national citizenship means less than this, it means nothing."). *See also Shapiro,* 394 U.S. at 666–69, 89 S.Ct. 1322 (Harlan, J., dissenting). Another suggestion is that the right to interstate travel is incorporated in the privileges and immunities clause of Article IV of the Constitution of the United States. *Zobel v. Williams,* 457 U.S. 55, 78–81, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982) (O'Connor, J., concurring in the judgment); *Ward v. State,* 79 U.S. 418, 12 Wall. 418, 20 L.Ed. 449 (1870); *Paul v. State of Virginia,* 75 U.S. 168, 180, 8 Wall. 168, 19 L.Ed. 357 (1868). Justice Harlan raised the possibility that the due process clause may be the source of the right to interstate travel. *Shapiro,* 394 U.S. at 661–62, 89 S.Ct. 1322 (Harlan, J., dissenting). Ultimately, it has been asserted that no source need be identified that guarantees this fundamental right. In *Shapiro,* 394 U.S. at 630, 89 S.Ct. 1322, a majority of the court said, "[w]e have no occasion to ascribe the source of this right to travel interstate to a particular constitutional provision." *See also Zobel,* 457 U.S. at 67, 102 S.Ct. 2309 (Brennan, J., concurring). Federal courts that have had occasion to address the issue have concluded that this constitutional right extends to intrastate travel. *Lutz v. City of York, Pa.,* 899 F.2d 255, 267 (3rd Cir.1990); *King v. New Rochelle Municipal Housing Authority,* 442 F.2d 646, 648 (2nd Cir.), *cert. denied,* 404 U.S. 863, 92 S.Ct. 113, 30 L.Ed.2d 107 (1971); *Pencak v. Concealed Weapon Licensing Bd. for County of St. Clair,* 872 F.Supp. 410 (E.D.Mich.1994); *Pottinger v. City of Miami,* 810 F.Supp. 1551, 1580 (S.D.Fla.1992); *Stoner v. Miller,* 377 F.Supp. 177, 180 (E.D.N.Y. 1974).

■ Like the Constitution of the United States of America, the Constitution of the State of Wyoming does not specify any right of citizens to travel freely throughout the state. Specifically, the Constitution of the State of Wyoming circumscribes the power of government. This concept is encompassed by Wyo. Const. art. 1, § 36:

> The enumeration in this constitution, of certain rights shall not be construed to deny, impair, or disparage others retained by the people.

This constitutional provision stands as an acknowledgment that fundamental personal rights, not specifically enumerated in the constitution, still are protected from governmental infringement. Those rights not granted to the state by the constitution remain with the people. *See Cross v. State,* 370 P.2d 371, 377 (Wyo.1962).

The right to travel freely throughout the state is a necessary and fundamental aspect of our emancipated society, and it is retained by the citizens. It indeed would be incongruent to identify a fundamental right to travel protected by the Constitution of the United States with respect to interstate travel, and yet to conclude that the right to travel intrastate is inhibited. *See King,* 442 F.2d at 648.

■ The constitutional question posed is whether the rights of a parent and the duty of the courts to adjudicate custody serve as a premise for restricting or inhibiting the freedom to travel of a citizen of the State of Wyoming and of the United States of America. We hold this to be impossible. The right of travel enjoyed by a citizen carries

with it the right of a custodial parent to have the children move with that parent. This right is not to be denied, impaired, or disparaged unless clear evidence before the court demonstrates another substantial and material change of circumstance and establishes the detrimental effect of the move upon the children. *See In re Marriage of Burgess*, 13 Cal.4th 25, 51 Cal.Rptr.2d 444, 913 P.2d 473, 480 (1996) and *Matter of Marriage of Greene*, 107 Or.App. 338, 812 P.2d 11, 11 (1991). While relocation certainly may be stressful to a child, the normal anxieties of a change of residence and the inherent difficulties that the increase in geographical distance between parents imposes are not considered to be "detrimental" factors. *Cf. In re Marriage of Sheley*, 78 Wash.App. 494, 895 P.2d 850, 856 (1995), *overruled on other grounds by In re Marriage of Littlefield*, 133 Wash.2d 39, 940 P.2d 1362, 1371 (Wash.1997) and Janet M. Bowermaster, *Sympathizing with Solomon: Choosing Between Parents in a Mobile Society*, 31 U. Louisville J. Fam. Law 791, 799 (1992–93).

The sound policy reasons which support this analysis were articulated by the Supreme Court of California:

> As this case demonstrates, ours is an increasingly mobile society. Amici curiae point out that approximately one American in five changes residences each year. Economic necessity and remarriage account for the bulk of relocations. Because of the ordinary needs for **both** parents after a marital dissolution to secure or retain employment, pursue educational or career opportunities, or reside in the same location as a new spouse or other family or friends, it is unrealistic to assume that divorced parents will permanently remain in the same location after dissolution or to exert pressure on them to do so. It would also undermine the interest in minimizing costly litigation over custody and require the trial courts to "micromanage" family decisionmaking by second-guessing reasons for everyday decisions about career and family.

*In re Marriage of Burgess*, 51 Cal.Rptr.2d 444, 913 P.2d at 480–81 (emphasis in original). An inhibition upon the right to travel is never imposed upon the non-custodial parent who is free to move at will despite the location of the children. The motives of the non-custodial parent will not be questioned by the court with respect to such relocation, and the custodial parent has no power to inhibit it. The inherent inequities of such a situation stand as an additional reason that courts have concluded that custodial parents should be permitted to move with their children. *In re Marriage of Francis*, 919 P.2d 776, 784 (Colo.1996); *D'Onofrio*, 365 A.2d at 30.

■■■ Mr. Watt, as the non-custodial parent in this situation, was required to carry the burden of demonstrating that a material and substantial change of circumstances had occurred, sufficient to justify the trial court in ordering a change in custody. He did not meet that burden other than by establishing the relocation, which we hold, as a matter law, is not, without more, a material and substantial change of circumstances for purposes of invoking Wyo. Stat. § 20–2–113(a) (Repl.1994). " '[A] party must show, in addition to the existence and extent of the change, that the change is significant *in relation to* the modification sought.' " *Stevens v. Collard*, 837 P.2d 593, 596 (Utah App. 1992), *cert. denied*, 862 P.2d 1356 (Utah 1993) (*quoting Becker v. Becker*, 694 P.2d 608, 610 (Utah 1984)) (emphasis in original).

■■■ In light of our prior cases, and our concern for the protection of constitutional liberties of the citizens of the State of Wyoming, we hold that an intrastate relocation by a custodial parent, taking the children along, cannot by itself be considered a change in circumstances sufficiently substantial and material to justify reopening the question of custody. In various ways, several of our sister jurisdictions have adopted this rule. *E.g., Jaramillo v. Jaramillo*, 113 N.M. 57, 823 P.2d 299, 304–05 (1991); *Matter of Marriage of Duckett*, 137 Or.App. 446, 905 P.2d 1170, 1172 (1995); *Matter of Marriage of Greene*, 812 P.2d at 11–12; and *Fossum v. Fossum*, 545 N.W.2d 828, 832–33 (S.D.1996).

■■■ This precept also applies to factors that are derivative of the relocation. The custodial parent's right to move with the children is constitutionally protected, and a court may not order a change in custody

based upon that circumstance alone. Some other change of circumstances, together with clear evidence of the detrimental effect of the other change upon the children, is required. Such a circumstance necessarily would have to be sufficiently deleterious to the welfare of the children that by itself it would serve as a substantial and material change in circumstances even in the absence of a relocation.

The trial judge in this case changed custody from Mrs. Watt to Mr. Watt based upon Mrs. Watt's move to Laramie. The other factors articulated by the trial court, such as Mrs. Watt's alleged previous interest in seeing her children brought up in Upton; the relocation of the maternal grandparents to Upton; or Mrs. Watt's status as a student do not, together or separately, constitute a material and substantial change in circumstances to justify the order of the trial court. Those circumstances are examples of those factors, clearly related to and derivative of the relocation, which have no negative impact upon the welfare of the children. Mrs. Watt moved to Laramie for legitimate, sincere, and good faith reasons, and Mr. Watt is seeking to obtain custody of his sons for legitimate, sincere, and good faith reasons. No evidence in the record shows the move is detrimental to the children, unless it be the speculative suggestion by the trial court that a concern exists as to Mrs. Watt's status as a student in a discipline that is a difficult undertaking and its detraction from her ability to rear her children.

Reasonable visitation remains possible, even if that visitation might be less than what Mr. Watt previously enjoyed. Visitation can be resolved by the appropriate exercise of the broad discretion of the trial court to modify orders with respect to contact and visitation in order to minimize the loss of contact and visitation between children and the non-custodial parent. Relocation indeed is a ground for such a modification. It is not a ground for modifying custody. Without the presence of a material and substantial change in circumstance to justify a change in custody in this case, the trial court should not have considered the issue.

The Order Modifying Decree of Divorce is reversed.