**John Lawler RESOR, Appellant (Defendant),**

v.

**Sarah Phelps RESOR, Appellee (Plaintiff).**

No. 98–158.

Supreme Court of Wyoming.

Aug. 12, 1999.

Representing Appellant: Kim D. Cannon and Kathleen G. Healy of Davis & Cannon, Sheridan, Wyoming. Argument by Mr. Cannon.

Representing Appellee: Weston W. Reeves of Reeves & Miller, Casper, Wyoming.

Guardian Ad Litem Katherine L. Mead of Mead & Mead, Jackson, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

GOLDEN, Justice.

John Lawler Resor (Father) appeals from the district court's order establishing primary physical custody of their children with Sarah Phelps Resor (Mother). After examining the record, we find the district court considered all of the evidence before it and properly used its discretionary power when it determined it was in the best interest of the children to be in Mother's physical custody with liberal visitation privileges to Father. Contrary to Father's assertions, the decision was not based on gender, and the district court clearly considered and provided for Mother's relocation to Seattle, Washington, when making its custody decision.

## ISSUES

Father presents the following statement of the issues:

I. Did the trial court err in making a custody determination based on a stereotypical assignment of the "primary caregiver" label, instead of an articulation of the "best interests" of the children?

II. Did the trial court fail to exercise its discretion by automatically allowing relocation of the children to Seattle without determining whether relocation would be in the children's "best interests"?

III. Did the trial court fail to apply an appropriate two-step analysis to determine whether the move was in the children's "best interests" and whether there were sufficient reasons for the move?

Mother submits this statement of issues:

I. Whether the trial court abused its discretion in determining that it was in the best interest of the parties' two minor children to place primary custody in their mother, the appellee, subject to extensive visitation rights for the father.

II. Whether the trial court abused its discretion in refusing to give primary custody to the father because of the mother's intention to move out of Jackson, Wyoming.

The Guardian Ad Litem submitted a brief as well, presenting the following issue statement:

Did the trial court abuse its discretion when it permitted relocation of the minor children without first determining whether the relocation was in the children's best interests[?]

## FACTS

The parties were married on August 12, 1989, in Teton County, Wyoming. Two children were born of the marriage. The first child was born on January 1, 1992, and the second was born July 15, 1995. The children resided with their parents in Teton County, Wyoming, since their birth. On September 16, 1996, Mother filed a complaint asking for a divorce, joint legal custody and primary physical custody with Mother, child support, maintenance, attorney's fees, and equitable distribution of the parties' debts and assets. Father's answer concerning custody requested primary physical custody of the children or joint custody of the children with Father

---

* Retired November 2, 1998.

exercising primary physical custody, subject to reasonable visitation by Mother.

On January 28, 1997, the district court entered an order appointing a guardian ad litem to represent the best interests of the children. On January 30, 1997, the district court entered an order concerning temporary custody which provided for shared custody as follows:

> The parties shall share equally in the custody of the minor children during the pendency of this action. Custody shall be alternated on a weekly basis commencing Friday nights at 6:00 p.m. [Father's] first week of custody shall commence Friday, January 31, 1997 at 6:00 p.m.

At the time of the temporary order, the trial was scheduled for June 2, 1997. However, the trial was delayed until December 17, 1997, leaving the temporary custody order in place for nearly one year, rather than four months. The parties conducted discovery, designated experts to testify about the custody issue, and presented evidence to the district court in a three-day trial. The district court ruled from the bench on December 19, 1997, then filed a decree of divorce on February 25, 1998. The district court awarded joint legal custody to both parents, but primary physical custody to Mother with liberal visitation to Father. Father filed this timely appeal.

## STANDARD OF REVIEW

Our standard of review in domestic relation matters was succinctly stated in *Reavis v. Reavis*, 955 P.2d 428 (Wyo.1998):

> Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court. It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. The determination of the best interests of the child is a question for the trier of fact. We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle.

> A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford to the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. Similarly, an abuse of discretion is present when a material factor deserving significant weight is ignored.

*Id.* at 431 (citations omitted).

## DISCUSSION

■ Appellant argues the district court failed to make factual findings to support its decision and that failure requires reversal of the trial court, or alternatively, "a remand to make findings under *Reavis* . . . ." We reversed in *Reavis* because there was *no* evidence to support the court's decision, not because it did not make findings of fact. *Reavis*, 955 P.2d at 434. In *Reavis*, we suggested that the trial court spell out its reasons so that counsel and the reviewing court will know what those reasons are, and be in a position to evaluate the soundness of its decision. *Id.* at 431–32. We continue to encourage a trial court relying on discretionary power to place on record the circumstances and factors that were crucial to its determination. However, it is not required to do so.

■ Additionally, our rules do not require the trial court to issue findings of fact "unless one of the parties requests it before the introduction of any evidence, with the view of excepting to the decision of the court upon the questions of law involved in the trial." W.R.C.P. 52(a). The district court's scheduling order informed the parties "[r]equests for findings of fact or conclusions of law shall be filed along with the pretrial memoranda." Neither party made such a request and, as such, Father will not be heard to complain of the absence of formal findings.

In any event, the district court made the following announcement from the bench:

The factors that I considered as far as the custody of [the children]—and I'm certain we'll all agree as we're sitting here that really the most important matter before the Court for these last three days was the custody of those two little boys.

I took into consideration the interaction and the relationship of those two little boys with their parents, with their grandparents and also others, who, through the testimony, it became quite obvious to the Court that there were others who significantly affected [the children].

Also, the children's adjustment to their home, school and community; the mental and physical health of both Mr. and Mrs. Resor; also the stability of both parents; and the report, as I said, of the guardian ad litem.

\* \* \*

Also one of the—especially with children of this age, a very important factor—and I'm not saying the most important factor—but for the Court to consider is who the primary care-giver has been.

I saw—and I advised counsel of this in chambers this afternoon, Mr. and Mrs. Resor—I saw two very loving, fit, capable and caring parents. And in that regard, [the children] are most fortunate.

Of course, ideally, they should be living with you as a family. But you can't live together as husband and wife, and so that's the reason obviously that we've been here, that we are here.

I considered Mrs. Mead's report, or recommendation, Dr. Hickman, Dr. Enright, and I cannot imagine that this temporary custody of one week with the mother and one week with the father has been very good for these two small boys, even though there was testimony that it really had not been that devastating.

I also can't put myself in the shoes of Judge Rogers, but I have a feeling that if he would have known that that temporary order for custody would go on for—I think it's been eleven months—that he probably wouldn't have entered such an order. I have not talked to Judge Rogers about it,

so I—that's just—I just can't imagine. I guess I can't imagine ordering that for eleven months with these two small boys.

I do not know that I've seen—and I mean this, Mr. Resor—a more devoted, loving father, and a hands-on father, as I've seen, as you testified, and also as Dr. Enright testified, as well as many other witnesses. Also the family support that those young boys have in this community is most impressive. And like I say, they're just two lucky little boys.

I also observed, Mrs. Resor, and as I told counsel, I feel she's a very devoted, loving, conscientious, committed mother. And she's also most fortunate to have the love and support of an extended—of a large family.

I am going to award—I'm going to—it's going to be what I consider joint legal custody, but with primary physical custody to Mrs. Resor. I'm not going to make any kind of a ruling that Mrs. Resor can or cannot move out of the valley.

The primary physical custody for Mrs. Resor will be—she will have the primary physical custody of [the children] during the school year with very liberal visitation to Mr. Resor. That includes a minimum of one weekend per month. If Mrs. Resor does decide to move to Seattle, according to what I understood the testimony of Mrs. Resor to be, the school in which she plans on enrolling [the older child] does allow for probably a three or maybe even four weekends a month. If that is going to be the case, I would—I am going to require that Mrs. Resor accompany the children to Jackson for these—for this monthly weekend visit.

I am also going to order that immediately upon enrollment of [the older child] in St. John's school, if you do decide to move to Seattle, that you are to immediately supply Mr. Resor with the school schedule so he can plan accordingly.

Also, any time that Mr. Resor is—if he gives you reasonable notice—I'm not going to say 24 hours or 48 hours, maybe it might only be six hours of notice to Mrs. Resor that he's going to be in Seattle, if

you are in Seattle, that he's to be allowed visitation.

I'm going to at this time—well, not at this time. I'm going to give Mr. Resor almost complete summer visitation, which is unusual. Usually courts only give six to eight weeks. But I feel that because of the summer, that will be so important to those young boys to be with Mr. Resor and his family.

I'm going to order that the summer visitation start three days after school is out and that the boys are to be back one week before school starts.

Of course, Mr. Resor, during this summer visitation—when you have custody or visitation in the summer, that if Mrs. Resor wishes to visit the children upon reasonable notice, she should be allowed to do so.

I'm going to order that only three major holidays, Thanksgiving, Christmas and Easter/Spring Break be alternated. And if the parties—this is just the beginning. It's the end of this phase of your life, but just the beginning of an awfully lot of hard work, I think, on both of your parts, to cooperate and to communicate. And unless counsel would want me to, or the parties, I could split Christmas vacation up to have one of the parties have Christmas up to Christmas morning and then the other half of the Christmas vacation go to the other party. But I'm not going to do that unless counsel wants me to.

Maybe if—maybe it will be necessary. But I'm going to, as I said, just alternate the three holidays, Thanksgiving, Christmas and Easter/Spring Break.

This has been especially—these always are hard, but especially hard, because I saw sitting before me two intelligent people who are still, I think, very bitter about many things. And I can't tell you how important it is that you put aside that acrimony. Because after all—and I know you both were sincere when you both said to this Court that those two little boys were the most important thing in your lives, and I am also confident that neither one of you—neither one or both of you will ever sully or deprecate the other parent in front of the other, and as well as the families, the Resors and the Phelps, that they will not do that either.

■ We find the trial court's decision to be well-reasoned. After hearing considerable evidence, the court made a finding that the mother was the primary care-giver of these children. We find no indication that the decision was based on gender. As evident from the above trial transcript excerpt, the trial court did explain its reasoning in the case at bar.

■ Father insists that Mother either give up her plans to relocate or give up the children and suggests that the court tell Mother where to live. Not only would such an endeavor be unwise, our decisions preclude us from doing so. *See Watt v. Watt*, 971 P.2d 608 (Wyo.1999); *Love v. Love*, 851 P.2d 1283, 1286–89 (Wyo.1993). In *Martin*, we rejected the same anticipatory custody provision Father requested in this case. *Martin v. Martin*, 798 P.2d 321, 323 (Wyo.1990). In that case, the trial court entered a joint custody order which provided that if either party moved from Laramie, Wyoming, primary custody would vest in the non-moving parent. This Court reversed, stating:

> The district court's anticipatory conclusion that the best interests of the children will be served by a nine-month/three-month split in favor of the parent remaining in Laramie is an abuse of discretion. As noted above, the test for child custody is the best interests of the children, and such a decision cannot be made without the district court having before it all facts necessary to make such a determination. What those facts may be, if and when one or the other parent leaves Laramie, can only be pure speculation at this point in time.

*Martin*, 798 P.2d at 323.

We also addressed a parent's decision to relocate in *Love*. In that case the mother had custody during the school year and the father had custody over the summer. The divorce decree incorporated a stipulation between the parties requiring consent or a court order before the children could be moved from Sheridan. Over the next several years, both

parents lived in Sheridan, and the father participated extensively in the children's lives and the children thrived. *Love*, 851 P.2d at 1285. The mother then decided to move to Sioux Falls, South Dakota, and requested permission pursuant to the decree. The father opposed the move, arguing that regular visitation would be impossible if it was allowed. *Id.* at 1289. He argued that the move would constitute a sufficient change of circumstances to merit modification of the custody order. *Id.* at 1285.

Although we recognized that "the current situation of custody and visitation has worked very well for both the children and their parents," we affirmed, holding that " '[s]o long as the court is satisfied with the motives of the custodial parent in seeking the move and reasonable visitation is available to the remaining parent, removal should be granted.' " *Id.* at 1288–89 (quoting *Arquilla v. Arquilla*, 85 Ill.App.3d 1090, 41 Ill.Dec. 450, 407 N.E.2d 948, 950 (1980)). We also observed, "[f]ather's change in visitation due to mother's relocation is unfortunate, but not an unusual result of divorce." *Id.* at 1289. We concluded the mother had a good faith motive for relocating, although her plans were somewhat speculative. *Id.* So long as reasonable visitation is possible, relocation should not be sacrificed to maintain existing visitation. *Id.*

■ Father argues that the district court did not consider whether the move was in the best interests of the children. However, the court knew of Mother's plans to relocate and addressed the issue by establishing visitation and child support based on Mother's residence in Seattle, Washington. We reject Father's suggestion that our case law requires a two-part analysis for relocations in custody situations.[1]

■ We also reject Father's argument that Mother prove relocation is necessary. It is unrealistic to assume that divorced parents will remain in the same location after dissolution of the marriage or to exert pressure on them to do so. The district court's

refusal to rule on the relocation issue was not an abdication of its responsibility, as Father suggests; rather, the district court's refusal to rule on Mother's possible relocation was correct. We recently discussed the constitutional implications of such a decision in *Watt*:

> The constitutional question posed is whether the rights of a parent and the duty of the courts to adjudicate custody serve as a premise for restricting or inhibiting the freedom to travel of a citizen of the State of Wyoming and of the United States of America. We hold this to be impossible. The right of travel enjoyed by a citizen carries with it the right of a custodial parent to have the children move with that parent. This right is not to be denied, impaired, or disparaged unless clear evidence before the court demonstrates another substantial and material change of circumstance and establishes the detrimental effect of the move upon the children. While relocation certainly may be stressful to a child, the normal anxieties of a change of residence and the inherent difficulties that the increase in geographical distance between parents imposes are not considered to be "detrimental" factors.

> The sound policy reasons which support this analysis were articulated by the Supreme Court of California:

>> As this case demonstrates, ours is an increasingly mobile society. Amici curiae point out that approximately one American in five changes residences each year. Economic necessity and remarriage account for the bulk of relocations. Because of the ordinary needs for **both** parents after a marital dissolution to secure or retain employment, pursue educational or career opportunities, or reside in the same location as a new spouse or other family or friends, it is unrealistic to assume that divorced parents will permanently remain in the same location after dissolution or to exert pressure on them to do so. It would also undermine the interest in minimiz-

---

1. Father advocates for the following two-part analysis:

    1) a determination of the best interests of each child;

2) careful scrutiny of the relocating parent's reasons for the move, with adequate reasons being employment, economic necessity or remarriage.

ing costly litigation over custody and require the trial courts to "micromanage" family decisionmaking by second-guessing reasons for everyday decisions about career and family.

*In re Marriage of Burgess,* 13 Cal.4th 25, 51 Cal.Rptr.2d 444, 913 P.2d [473,] 480–81 [ (1996) ]. An inhibition upon the right to travel is never imposed upon the non-custodial parent who is free to move at will despite the location of the children. The motives of the non-custodial parent will not be questioned by the court with respect to such relocation, and the custodial parent has no power to inhibit it. The inherent inequities of such a situation stand as an additional reason that courts have concluded that custodial parents should be permitted to move with their children.

*Watt,* 971 P.2d at 615–16 (citations omitted).

In the case before us, the district court determined Mother was the primary care giver of these children and found it was in the best interest of the children to place them in the primary care and physical custody of Mother. Once that decision was made, the "necessity" of her move has little, if any, substantive bearing on her suitability to care for the children. Geographical relocation does not make a parent who has cared for the children less capable of maintaining parental responsibilities and obligations. Recently, the Washington Supreme Court insightfully explained:

[T]he practical result of a marriage dissolution is that parenting and family life will not be the same after dissolution. This is so even though a trial court may believe it is in the "best interests of the child" to continue to live in the same family unit. A child cannot escape the reality that his or her family is no longer the same. The trial court does not have the responsibility or the authority or the ability to create ideal circumstances for the family.

*Marriage of Littlefield,* 133 Wash.2d 39, 940 P.2d 1362, 1371 (1997).

As a final matter, the divided custody arrangement suggested by the guardian ad litem and Father are surprising and unrealistic. Our cases have consistently and clearly disfavored divided custody arrangements. *See Reavis v. Reavis,* 955 P.2d 428, 431–34 (Wyo.1998); *Martin v. Martin,* 798 P.2d 321 (Wyo.1990); *Feaster v. Feaster,* 721 P.2d 1095, 1098 (Wyo.1986); *Ayling v. Ayling,* 661 P.2d 1054, 1055 n. 3 (Wyo.1983). We commend the trial judge for making a difficult and courageous decision, rather than trying to keep both parents happy at the expense of the children. Considering Mother's expressed intention to move to Washington, disagreement over the proper custody arrangement, and the acrimony which was clear in the record, this case presents circumstances where divided custody would have crossed the line we referred to in *Martin.* If the trial court had ordered divided custody as Father urged, we most likely would have ruled that it was an abuse of discretion to do so.

The parties have decided to divorce and lead separate lives. Father's proposed custody arrangement suggests that they act as if they had not made this decision. The court's objective is not to reconstruct a family that is no more, but to provide the framework for a new family that can best serve the children. The district court did this admirably when it placed the children with their primary caretaker, subject to liberal visitation with Father. Once the court determined the children would be best served in the primary physical custody of their mother, it would have been error to force Mother to choose between losing her children and living in the location she has selected for her separate life.

## CONCLUSION

Mother presented good faith motives for relocation. Father did not argue to the contrary and did not present evidence that the move would be detrimental to the children. The move does not prevent reasonable visitation. In fact, the district court provided for extensive visitation. We do not require any more than this. Therefore, we affirm the district court's order.