2005 WY 99

**Jeral Dee HARSHBERGER,
Appellant (Plaintiff),**

v.

**Charles A. HARSHBERGER,
Appellee (Defendant).**

No. 04–197.

Supreme Court of Wyoming.

Aug. 23, 2005.

Representing Appellant: Carol K. Watson of Phelan–Watson Law Offices, Cheyenne, Wyoming.

Representing Appellee: Greg Knudsen of Knudsen Law Offices, Torrington, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, VOIGT and BURKE, JJ.

HILL, Chief Justice.

[¶ 1] Jeral Dee Harshberger (Mother) appeals a district court order that transferred primary custody of the parties' two minor children to Charles A. Harshberger (Father). We affirm.

## ISSUES

[¶ 2] Mother states four issues in her brief:

I. Whether the district court committed an error of law, when it considered evidence from the date of the original divorce decree, to conclude there was a material change of circumstances to change custody, rather than considering evidence from the date of the most recent order modifying visitation, as prescribed by Wyo. Stat. Ann. § 20–2–204(c).

II. Whether the district court abused its discretion, when it concluded in its Decision Letter that "the evidence shows that frequent moving creates an expectation of upheaval for the children, and can negatively affect school work and relationships" without any expert testimony to prove the truth of the court's statement.

III. Whether the district court abused its discretion and/or committed an error of law, when it considered evidence of [Father's] unsubstantiated motions for contempt as a basis of changing custody.

IV. Whether the district court abused its discretion, when it changed custody to [Father], knowing that, at least once, he had been convicted for indecent exposure.

In his brief, Father simply reiterates the issues as presented by Mother.

## FACTS

■ [¶ 3] The parties were divorced in 1999. Mother was granted primary custody of the parties' two minor children. On February 5, 2004, Father filed a petition to modify custody wherein he sought primary custody of the children. The hearing on Father's petition was not recorded. When an appealed order is predicated upon testimony and evidence adduced at an unrecorded hearing our review is constrained:

When this Court does not have a properly authenticated transcript before it, it must accept the trial court's findings of fact upon which it bases any decisions regarding evidentiary issues. *Capshaw v. Schieck*, 2002 WY 54, ¶ 21, 44 P.3d 47, ¶ 21 (Wyo.2002). The failure to provide a transcript does not necessarily require dismissal of an appeal, but our review is restricted to those allegations of error not requiring inspection of the transcript. Lacking a transcript, or a substitute for the transcript, the regularity of the trial court's judgment and the competency of the evidence upon which that judgment is based must be presumed. *Stadtfeld v. Stadtfeld,*

920 P.2d 662, 664 (Wyo.1996); *Combs v. Sherry–Combs,* 865 P.2d 50, 55 (Wyo.1993); and see *Wood v. Wood,* 865 P.2d 616 (Wyo. 1993) (dismissing appeal for lack of record, rather than affirming).

*Burt v. Burt,* 2002 WY 127, ¶ 7, 53 P.3d 101, ¶ 7 (Wyo.2002).

[¶ 4] Since the lack of a transcript means that we must accept the trial court's findings of fact, we set forth the relevant portions of that court's Decision Letter:

> The Court considered the evidence and testimony presented at a hearing on July 23, 2004. The Court had previously heard evidence at hearings on motions for contempt, and at a hearing on a motion for counseling for [the parties' children, L.H. and T.H.] The Court finds that much of [Mother's] testimony lacks credibility. It is inconsistent with other testimony, vague, and often unsupported by evidence that is within [Mother's] control but for unknown reasons [Mother] chose not to present.
>
> The Court finds that circumstances have materially changed since the divorce in the following respects:
>
> 1. At the time of the divorce both parties lived in the Goshen County, Wyoming vicinity. Since then [Mother] * * * has changed residences thirteen (13) times. One of those moves occurred while the children were with [Father] for summer visitation, and 2 of the moves involved improved circumstances (from a 2 bedroom apartment to a 3 bedroom apartment to a house). However, the other moves are inexplicable. [Mother] told [Father] she would move to keep him away from the children, and then she moved to Cody, taking them 350 miles from their father. No evidence suggested that [Mother] improved her employment situation by this move, particularly in light of the pay and the work hours she has in Cody. The evidence established that [Mother] is considering another change of residence. On the other hand, [Father] has remained in the parties' family home since the divorce. The evidence shows that frequent moving creates an expectation of upheaval for

the children, and can negatively affect school work and relationships.

> [Mother] testified that the girls, especially L.H., have excelled academically and socially in Cody. The Court finds this testimony, along with much of her other testimony, lacking credibility and unpersuasive. [Mother] did not introduce any school records. She did not present testimony from any school personnel. She is unaware of a "directed learning" program that [L.H.] is in. [Mother's] opinion about current school performance is entirely inconsistent with [L.H.'s] prior performance.
>
> 2. [Mother] has changed employment four (4) times since the divorce. She now works as a [certified nursing assistant], making $900 per month. She works a 12–hour long night shift, requiring that she leave the children at night. She claims that her very elderly grandmother has consistently supervised the girls at night, but her testimony is not persuasive. Certainly, her job requires her absence when the girls require supervision and involvement about homework and activities. [Father] works 7:30 a.m. to 11 a.m. and noon to 5:30 p.m. Monday through Friday, and part of Saturdays, depending on the time of year. He has remarried, and if custody is changed, his wife will arrange to be at home about the time the girls get home from school each day.
>
> 3. [Father] established that [Mother] has consistently interfered with his relationship with [L.H. and T.H.] The Court file indicates that [Father] sought the Court's assistance with [Mother's] failure to cooperate in his relationship with the girls three (3) times before, on May 21, 2001, on September 25, 2002, and again on April 2, 2003. The evidence showed that [Mother] has scheduled or permitted the girls to participate in activities which conflict with his visitation. She has called [Father] derogatory names in front of the children, and has told the children that [Father] has a new family and doesn't love them any more. [Mother] also interferes with [Father's] relationship with the girls emo-

tionally. She makes statements to the girls during their visits which are emotionally harmful and place them in a position of having to choose between parents emotionally (ie: "I can't live without you" and "I'm so lonely"). [Mother] fails to recognize the impact of such statements on the girls, and claims to only be "expressing her concern for them." Although the Court's decree requires the parties to provide copies of records and information they obtain about the girls' education to each other, [Mother] has consistently refused to do so. She continued this refusal through the hearing, stating that she didn't have the time to get copies of school records for [Father] and that he could get them for himself. The evidence established that [Father] has attempted to obtain the girls' school records direct from the Cody schools, but inexplicably the Cody schools refused until faced with a subpoena from the Court.

4. Since the divorce decree [T.H.] has displayed signs of extreme social withdrawal. During the 2000–2001 school year [T.H.'s] pre-school recommended that she be professionally evaluated and possibly counseled. [Mother] refused these recommendations. During the past year [Mother] accused [Father's] step son of inappropriately touching [T.H.]. The Wyoming Department of Family [S]ervices investigated those allegations and found them to be unsubstantiated. However, in the course of their investigation DFS observed [T.H.'s] behavior and again recommended professional counseling. [Mother] refused, and [Father] petitioned the Court for an order requiring counseling. The Court ordered counseling for [T.H.] by a counselor selected jointly by the parties. [Mother] claims that she unilaterally selected a counselor who has seen [T.H.]. She failed to present any evidence from that counselor, or any records or evaluations. The counselor has refused to speak with or include [Father]. No information or recommendations were provided to [Father] for use during this summer visitation. This summer, [T.H.] continues to exhibit extreme withdrawal. She does not speak to anyone except her father and sister, does not interact with other children, and won't look at or converse with guests at home. A preponderance of the evidence establishes that [T.H.'s] condition is largely ignored by [Mother] and that [Mother] shuts [Father] out from information about or involvement in any evaluations or counseling.

5. The evidence established that [Mother] emotionally involved the girls in this dispute by telling them that if custody is changed "she will never be able to see the girls again."

These changes in circumstances, taken together, are material and support a change in custody.

The factors in W.S. § 20-2-201 support a change of custody. The evidence establishes that [Father] has a greater ability to "provide adequate care, including arranging for each child's care by others." [Father] has better ability to recognize and understand the children's educational, social and psychological needs. He is less likely to involve the children in an emotional tug of war between their parents. [Father] is more likely to permit the children to have and develop a relationship with both of their parents. He will provide appropriate educational and psychological care for the children, and is better able to insure that [Mother] is involved in those matters.

The Court finds that it is in the best interests of [L.H. and T.H.] that primary custody be changed to [Father].

Mother has appealed the district court's order changing primary custody of the parties' children.

### STANDARD OF REVIEW

■ ■ [¶ 5] Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court. It has been our consistent principle that in custody matters, the welfare and needs of the

children are to be given paramount consideration. The determination of the best interests of the child is a question for the trier of fact. We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle.

*Resor v. Resor,* 987 P.2d 146, 148 (Wyo.1999) (quoting *Reavis v. Reavis,* 955 P.2d 428, 431 (Wyo.1998)). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means [exercising] sound judgment ... with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Pace v. Pace,* 2001 WY 43, ¶ 9, 22 P.3d 861, ¶ 9 (Wyo.2001); *Vaughn v. State,* 962 P.2d 149, 151 (Wyo.1998) (quoting *Martin v. State,* 720 P.2d 894, 897 (Wyo. 1986)).

## DISCUSSION

[¶ 6] The lack of a transcript of the hearing on Father's petition to modify custody means that we accept the district court's findings of fact. As a consequence, our review is effectively limited to determining whether or not an error of law appears on the record. To the extent that Mother contests the factual findings of the district court we will not consider her arguments. After sifting through Mother's arguments, we have managed to discern arguments that arguably could be characterized as claims of legal error in the first, third, and fourth issues set out in her brief. We will address each of those in turn.

[¶ 7] In the Decision Letter the district court cited Mother's thirteen relocations since the divorce as one of the factors in its decision to award custody to Father. Mother contends that the court erred by considering this factor because this Court has held that a custodial parent has the right to move, and so relocation cannot be grounds for a substantial or material change in circumstances. A review of our case law reveals that Mother's characterization of our case law is accurate as far as it goes, but she neglects a limitation and an exception to our teaching.

[¶ 8] Our first foray into this area was in *Martin v. Martin,* 798 P.2d 321 (Wyo.1990). There the district court had entered a joint custody order providing that if either party moved from Laramie, primary custody would automatically vest with the non-moving party. We rejected such a scheme because it circumvented the district court's duty to evaluate custody decisions on the best interests of the children. *Id.* at 323.

[¶ 9] In *Love v. Love,* 851 P.2d 1283 (Wyo.1993), the custodial parent sought to move to another state in order to advance her educational opportunities. We noted that relocation cases were fact sensitive inhibiting the adoption of a bright line test. *Id.* at 1287–88. We concluded that our review of district court decisions in relocation cases would look "closely at balancing the continued rights of the parties with the best interests of the children as established at the time of divorce." *Id.* at 1288. Despite our declaration that we would eschew a bright line test, we proceeded to adopt a test to be utilized in evaluating relocations by a custodial parent:

> It would be incongruous for a court, when presented with a custodial order originally based upon the best interests of the child, to refuse to support the efforts of the custodial parent to maintain and enhance **their** standard of living, albeit in another jurisdiction. So long as the court is satisfied with the motives of the custodial parent in seeking the move and reasonable visitation is available to the remaining parent, removal should be granted.

*Love,* 851 P.2d at 1288–89 (emphasis in original) (quoting *Arquilla v. Arquilla,* 85 Ill. App.3d 1090, 41 Ill.Dec. 450, 452, 407 N.E.2d 948, 950 (1980)). In the end, we upheld the district court's conclusion that the mother had good reason for the relocation, and that "there was no reason to suggest that mother [would] not continue to provide a caring, nurturing environment for her children." *Id.* at 1289.

[¶ 10] In *Gurney v. Gurney,* 899 P.2d 52 (Wyo.1995), we held that when both parents inform the court that a joint custody arrangement is not working, a sufficient change in circumstances justifying the reopening of

the custody order had been presented to the district court. *Id.* at 55. In affirming the district court's decision to award primary custody to the father, we noted that the mother had correctly noted that her relocation to another city was not, in itself, a material change in circumstances. *Id.* (citing *Love*, 851 P.2d at 1288–89). However, we noted that the district court could have reasonably concluded that the conditions resulting from the move contributed to the parties' inability to agree and communicate, which were sufficient to constitute a sufficient change in circumstances. *Id.* at 55.

[¶ 11] Finally,[1] in *Watt v. Watt*, 971 P.2d 608 (Wyo.1999) we considered the constitutional implications of a custodial parent's relocation. The mother had been awarded primary custody of the parties' children. The divorce decree provided for an automatic change of custody to the father if the mother were to move more than 50 miles from their town of residence. The mother, seeking to attend graduate school, asked the district court to allow her to move more than 50 miles. The district court acknowledged that the automatic change clause was improper. Nevertheless, after a hearing, the court ordered a change of custody. *Id.* at 611–12. We began our analysis with a review of the prior decisions in *Love* and *Gurney* and concluded that:

> [r]elocation as a substantial and material change in circumstances was foreclosed by the decision in *Love*. Our decision established a strong presumption in favor of the right of a custodial parent to relocate with her children, assuming that the criteria articulated in *Love* are satisfied. After *Love*, we again held that a relocation, by itself, is not a substantial or material change in circumstances sufficient to justify a change in custody order. *Gurney v. Gurney*, 899 P.2d 52, 55 (Wyo.1995) (citing *Love*, 851 P.2d at 1288–89). *Love* and *Gurney* together capture a rule that a relocation by a custodial parent, where the motivation for the relocation is legitimate, sincere, in good faith, and still permits reasonable visitation by the non-custodial

parent, is not a substantial and material change in circumstances. A trial court abuses its discretion in making a contrary ruling that such a move amounts to a substantial and material change in circumstances.

*Watt*, 971 P.2d at 614. After noting that there was a constitutional right to travel under the federal and Wyoming constitutions and that there were inherent inequities in allowing a non-custodial parent but not the custodial parent to relocate without restraint, we held:

> In light of our prior cases, and our concern for the protection of constitutional liberties of the citizens of the State of Wyoming, we hold that an intrastate relocation by a custodial parent, taking the children along, cannot by itself be considered a change in circumstances sufficiently substantial and material to justify reopening the question of custody. . . .
>
> This precept also applies to factors that are derivative of the relocation. The custodial parent's right to move with the children is constitutionally protected, and a court may not order a change in custody based upon that circumstance alone. Some other change of circumstances, together with clear evidence of the detrimental effect of the other change upon the children is required. Such a circumstance necessarily would have to be sufficiently deleterious to the welfare of the children that by itself would serve as a substantial and material change in circumstances even in the absence of a relocation.

*Watt*, 971 P.2d at 616–17. We reversed the district court's order changing custody but added that relocation could be the basis for modifying visitation, if not custody. *Id.* at 617.

[¶ 12] To summarize, our precedent is quite clear that relocation, by itself, cannot be a substantial and material change in circumstances sufficient to justify reopening a custody order. That precept is also applicable to any factors that are derivative of relocation. What Mother has failed to acknowledge in her argument, however, is that our

---

1. *See Resor v. Resor,* 987 P.2d 146 (Wyo.1999) for an analysis of our decisions in *Love* and *Watt* and their application in the context of the initial custody decision.

precedent does not preclude the district court from considering the effects of relocation on the children so long as there is some other circumstance that is "sufficiently deleterious to the welfare of the children that by itself ... would serve as a substantial and material change in circumstances even in the absence of a relocation." *Watt*, 971 P.2d at 617; *see Gurney*, 899 P.2d at 55 (Where a custody order was properly reopened because both parties asserted that joint custody was not working, district court could have reasonably concluded that factors derivative of the relocation could have contributed to parties' inability to agree and communicate.). Furthermore, our cases stress that the rule set forth in *Love* and its progeny is predicated upon the motivation for the relocation being in good faith. *Love*, 851 P.2d at 1288–89 ("So long as the court is satisfied with the motives of the custodial parent in seeking the move ... removal should be granted."); *Watt*, 971 P.2d at 614 ("*Love* and *Gurney* together capture a rule that a relocation by a custodial parent, where the motivation for the relocation is legitimate, sincere, in good faith, and still permits reasonable visitation by the non-custodial parent, is not a substantial and material change in circumstances.").

[¶ 13] Here, a review of the record shows that the district court did not abuse its discretion by considering Mother's numerous relocations since the parties' divorce. The court's Decision Letter sets forth various factors independent of the relocations that could establish the existence of a substantial and material change in circumstances justifying the decision to reopen the custody order: (1) Mother had not maintained stable employment and had not provided adequate supervision of the children; (2) Mother had repeatedly interfered with Father's parental and visitation rights; (3) Mother had failed to provide adequate treatment to the youngest daughter for her emotional problems until compelled to provide therapy by court order, and even thereafter she refused to provide Father with any information about the results of the therapy; and (4) there was evidence that Mother had attempted to emotionally manipulate the children against their Father. Collectively, or individually, these factors support the district court's decision to reopen the custody order. Moreover, the court made a specific factual finding that Mother's motivation for at least one of her moves was not in good faith: "[Mother] had told [Father] that she would move to keep him away from the children, and then she moved to Cody, taking them 350 miles from their father." In either case, it appears on the record before us that there was a sufficient basis for the court to consider Mother's multiple relocations and their impact on the children in making the best interest determination.

■ [¶ 14] In a related argument, Mother contends that the district court erred when it considered relocations that occurred before the court modified the parties' custody and support order on July 8, 2003. Similarly, she claims that the court also considered employment changes that occurred before this date.

[¶ 15] Mother cites to the Wyoming statutes:

**§ 20–2–204. Enforcement and modification.**

. . . .

(c) A court having jurisdiction may modify an order concerning the care, custody and visitation of the children if there is a showing by either parent of **a material change in circumstances since the entry of the order in question** and that the modification would be in the best interests of the children pursuant to W.S. 20–2–201(a). [Emphasis added.]

Wyo. Stat. Ann. § 20–2–204(c) (LexisNexis 2005). We recently held that this statute prohibits consideration of pre-divorce evidence when there is a determination of whether there has been a substantial change in circumstances but that it did not limit the court's consideration of such information when making a determination of the children's best interest. *Selvey v. Selvey*, 2004 WY 166, ¶ 18, 102 P.3d 210, ¶ 18 (Wyo.2004). As noted above, there are independent grounds in the record for finding a material change of circumstances without considering either the relocations or Mother's employment history. Once material changes of circumstances have been found, the district

court could consider evidence of Mother's relocations and employment history under our decision in *Selvey*. We also note that the July 8, 2003 order was only concerned with visitation, not custody. Mother does not explain why the visitation order should act as a bar on the evidence the court could consider when determining custody. The original custody order set forth in the parties' 1999 divorce decree was still in effect at the time this proceeding was commenced. A review of the Decision Letter indicates that all of the events cited by the court relating to Mother's relocations and employment occurred after the divorce decree was entered. No matter how one views it, the district court did not abuse its discretion in considering this evidence when determining the best interests of the children.

 [¶ 16] In her third issue, Mother contends that the district court erred when it considered three motions to show cause filed by Father alleging that Mother had interfered in his relationship with the children. Mother insists that this was an error of law because Mother was never found in contempt and "it's a well known precept that accusations in affidavits are evidence of absolutely nothing without a hearing and a decision on the merits." The only citation that Mother offers in support of her contention is to our decision in *Donnelly v. Donnelly*, 2004 WY 72, 92 P.3d 298 (Wyo.2004). Mother does not provide a pinpoint citation or offer any discussion of the case; she simply lists it at the end of her argument. There is no discussion in *Donnelly* of "affidavits" or the effects of any statements made therein. The issues analyzed in that case concerned the effect of the improper admission of confidential statements made during mediation where trial was before the district judge, the use of gender as a basis for a custody decision, a non-cogent claim regarding visitation and a request for attorney's fees. We do not address claims of error that are not supported by cogent argument with citation to pertinent legal authority. *Cathcart v. Meyer*, 2004 WY 49, ¶ 20, 88 P.3d 1050, ¶ 20 (Wyo.2004).

Mother has not presented either to us, so we decline to address her claim.[2]

 [¶ 17] In her final claim of error, Mother asserts that the district court abused its discretion in ordering a change of custody despite knowing that Father had been convicted of indecent exposure. Father vehemently denies the accusation claiming that he has never been charged with, or convicted of, indecent exposure. Father concedes only that he was convicted of breach of the peace approximately five years before the divorce action was commenced in 1999.

[¶ 18] There is no evidence in the record of any conviction of any crime for Father. As the proponent, the burden is on Mother to establish evidence on the record supporting her contention. As we noted at the outset, the absence of a transcript means that we presume the regularity of the trial court's judgment and the competency of the evidence upon which that judgment is based. In the absence of any evidence in the record that the trial court had before it verification of a conviction of Father and that Mother's characterization of such was accurate, we cannot conclude that there was an abuse of discretion by the court in reaching the custody decision.

## CONCLUSION

[¶ 19] Since no error appears on the record before us, the district court's decision granting custody of the parties' children to Father is affirmed.

---

---

**2.** We note in passing that even if we had accepted Mother's contention of error, the district court's Decision Letter contains adequate grounds for affirming its decision without any consideration being given to the motions for cause filed by Father.