2012 WY 157

**Cody T. ZEITNER, Appellant (Plaintiff),**

v.

**Joseph Grossmayer SHANK,
Appellee (Defendant).**

**No. S–12–0142.**

Supreme Court of Wyoming.

Dec. 13, 2012.

Representing Appellant: Pro se.

Representing Appellee: No appearance.

Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.

BURKE, Justice.

[¶ 1]  Appellant, Cody Zeitner, acting *pro se*, challenges the district court's order denying her petition for modification of custody. No transcript of the hearings on the petition was created, and Ms. Zeitner's statement of the evidence was not approved by the district court pursuant to Wyoming Rule of Appellate Procedure 3.03.  Further, Ms. Zeitner's appellate brief fails to comply with several provisions of W.R.A.P. 7.01.  Based on the lack of a hearing transcript and the deficiencies in Ms. Zeitner's brief, we affirm.

## ISSUES

[¶ 2]  Ms. Zeitner (Mother) presents the following issues:

1.  Did the trial Judge's decision to admit and review evidence in September, 2011 but fail to acknowledge it in January, 2012, a full four months later, violate due process?

2.  Did the trial Judge's personal opinion about the Plaintiff and her marriage, specifically forming opinions based on no facts or evidence, violate the Wyoming Judicial Code of Conduct?

3.  Maricopa County Superior Court in Arizona made over 30 rulings.  Did misinterpretations and failure to clarify the Arizona[ ] Court['s] 2007 and 2008 orders filed by the maternal grandparents result in an unfair ruling?  Were they even relevant to these proceedings?

4.  [The trial court] faxed information to the Defendant that was used to discredit the Plaintiff on a Power of Attorney that was filed by mistake.  The correct and legal document was admitted into evidence.  Did [the court's] ex parte communication with the Defendant violate the Wyoming Judicial Code of Conduct?

5.  Plaintiff filed [the] petition based on very specific UCCJEA[1] statutes as well as the application of Wyoming statutes on child abuse and abandonment that fell under UCCJEA guidelines.  Did [the court's] failure to rule on the issues in the Plaintiff's initial pleading result in an unfair ruling?

Appellee (Father) did not file a brief.

## FACTS

[¶ 3]  The parties were married in 1999 in Mesa, Arizona.  Two children were born into the marriage: BJS, born in 2000, and AZS, born in 2003.  Upon dissolution of the marriage in 2004, the parties agreed they would share joint legal custody of the children and that Mother would have primary residential custody.  Seven months after entry of the parties' stipulated divorce decree, Mother filed a petition for sole custody of the children in the Superior Court of Arizona for Maricopa County.  The court granted the petition.  Ten months later, Father petitioned for sole custody of the children.  The Arizona court granted Father's petition by default and awarded sole custody of the children to him.  The children's maternal grandparents, Patty and Richard Trembley, were subsequently granted visitation with the children.  In May, 2008, the court entered an order "granting grandmother's request to al-

---

1.  "UCCJEA" refers to the Uniform Child Custody Jurisdiction and Enforcement Act. Wyoming's version of the UCCJEA is codified at Wyo. Stat. Ann. §§ 20-5-201 through 20-5-502 (LexisNexis 2011).

low the minor children, [AZS] and [BJS] to have contact with their natural mother [ ] during grandparenting time."

[¶ 4] In late 2009, Father relinquished physical custody of AZS to the Trembleys after AZS was hospitalized for an appendectomy. Ms. Trembley collected AZS from the hospital in Arizona and returned with him to her home in Buffalo, Wyoming. Father executed a "Limited Non–Durable Power of Attorney" granting the Trembleys the power to exercise Father's parental rights with respect to the care, custody, and control of AZS for a period of one year. In 2010, the parties' older child, BJS, also moved to Wyoming to live with the Trembleys.

[¶ 5] In the summer of 2011, Father requested that his children be returned to him. When Mother learned of Father's request, Mother moved the children to Cheyenne without Father's knowledge or consent. On July 19, 2011, Mother filed a petition in Laramie County District Court seeking custody of the children. Mother's petition asserted that Father had not contacted AZS during AZS's residence in Wyoming, and that Father had not contacted BJS since April, 2011.

[¶ 6] On August 15, 2011, Father filed a "Petition to Modify Child Custody, Parenting Time and Child Support" in the Arizona Superior Court, seeking to terminate any visitation rights held by Mother and the children's grandparents. Father's petition alleged that he travelled to Buffalo to retrieve his children, but that "[t]he grandparents refused to tell me where the children were and how to get a hold of them." Father asserted that "no parenting or Grandparenting time should be granted because the children are now missing and the Grandparents refuse to give me any information as to their whereabouts."

[¶ 7] The Laramie County District Court determined that it had jurisdiction to review Mother's petition seeking custody of the children and set the matter for hearing. The hearing commenced on September 27, 2011, and for reasons that are unclear from the record, the hearing was concluded on January 17, 2012. No record of the proceedings was created. The court issued its final ruling

denying Mother's petition via email on January 19, 2012.[2] On May 16, 2012, the court issued an order memorializing its decision. That order provides, in relevant part, as follows:

The Court's initial thoughts and final email ruling are incorporated herein by this reference. The Court **FINDS** and **ORDERS** that the evidence presented is sufficient to find a substantial and material change of circumstances, but that it is in the best interests of the children that *Plaintiff's Motion for Emergency Custody* be denied. Custody of the two children at issue in this case shall remain with [Father] pursuant to the September 23, 2005 Minute Entry of Maricopa County, Arizona Superior Court Judge Connie Contes. The 2005 Minute Entry is a part of this file and incorporated herein.

The Court used the factors set forth in Wyoming Statute § 20–2–101(a) and § 20–2–101(c) in determining the best interests of the two children. The facts relied upon by the Court in determining the best interests of the children include, but are not limited to, the following:

*Behavior and Actions of the Parents*

1. W.S. § 20–2–201(a)(iv)—Both parties have shown a willingness to disregard this Court's orders and the Arizona Court's orders. However, [Father] expressly stated that he believes [Mother] should have a role in the children's lives. His statement appeared genuine. [Mother] did not convey the same sentiment to this Court about the importance of [Father's] role in the children's lives.

[Mother's] current possession of the children was done in direct violation of the Arizona court Order. [Father] requested that his children be returned to him in the summer of 2011. At the time, the children's maternal grandparents were caring for them in Buffalo, Wyoming with [Father's] permission. The children were only permitted to be in contact with their mother while in the company of the maternal grandparents. When [Mother] learned of [Father's] request to return the children, [Mother] violated the Arizona court

**2.** The court's email ruling is not included in the record.

order which prohibited her contact with the children outside the presence of their maternal grandparents and moved the children to Cheyenne while the grandparents remained in Buffalo, Wyoming and without the knowledge or consent of [Father].

[Mother] failed to give this Court any sincere indication that she was willing to relinquish care of the children to [Father] at specified times.

2. W.S. § 20-2-201(a)(c)—This Court considers spousal abuse as contrary to the children's best interests. [Mother's] new husband physically abused her at the beginning of their marriage and although there is very little evidence that the abuse took place in front of the children, the Court is concerned about the strength of [Mother's] current relationship and the instability a likely break up of that marriage represents to the children's future. There is no known history of domestic violence involving [Father].

3. W.S. § 20-2-201(a)(iv)—[Father] was awarded sole custody of the children in September of 2005. [Mother] admitted to this Court that she gave up fighting for her kids at that point and did not contest [Father's] custody. By doing so, she demonstrated an unwillingness to accept all responsibilities of parenting and acquiesced in the appropriateness of [Father] raising the children without her involvement. She failed to contact the children or lend any support to [Father] for a time period spanning from the end of 2005 through sometime in 2009. [Father] has never acquiesced in [Mother] being the custodian of their children and went to great lengths in Arizona to obtain, retain and regain physical custody of his children.

4. W.S. § 20-2-201(a)(iii)—The alleged forged affidavit and fabricated death threat called the credibility of both parties into question. This Court admonished the parties for not being honest in regard to these issues and putting their spite for one another over the best interests of their children.

*Situation with the Children*

5. Both children lived the early years of their life in Phoenix, Arizona. The youn-

ger child lived there for his first six years, and the older child for his first ten years. It was not until 2009 that the younger child left Arizona for Wyoming for what was purported to [Father] as better medical care. The older child left for Wyoming in 2010 to be with his brother and care for his ailing grandmother. They have remained in Wyoming ever since.

The Court heard evidence of the younger child's developmental disabilities and difficulties with school and social growth. Both parties, when the children were in their custody took steps to ensure that the younger child received special attention due to these disabilities. Both parties presented evidence that the child was taken care of while in their custody. There was no evidence materially distinguishing the development of the younger child while in the care of [Mother] or [Father]. The older child has flourished in Arizona and Wyoming.

6. This Court is hesitant to uproot the children yet again. However, the evidence showed that the children were developing similarly and had equal extended family support in both locations. As such, the evidence failed to generate a geographic preference based on alleged academic and social development that would override the other factors mentioned herein.

[¶ 8] Mother filed her notice of appeal on May 22, 2012. On June 27, Mother submitted a statement of evidence, which was prepared for purposes of this appeal pursuant to Wyoming Rule of Appellate Procedure 3.03. That rule provides as follows:

If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, appellant may prepare a statement of the evidence or proceedings from the best available means including appellant's recollection. The statement shall be filed and served on appellee within 35 days of the filing of the notice of appeal. Appellee may file and serve objections or propose amendments within 15 days after service. The trial court shall, within 10 days, enter its order settling and approving the statement of evidence, which shall be included by the

clerk of the trial court in the record on appeal.

The record does not reflect that the district court settled or approved Mother's statement of evidence.

### STANDARD OF REVIEW

[¶ 9] Child custody decisions are within the sound discretion of the trial court. *Testerman v. Testerman,* 2008 WY 112, ¶ 8, 193 P.3d 1141, 1144 (Wyo.2008).

> It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. The determination of the best interests of the child is a question for the trier of fact. We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle.

*Id.* (quoting *Resor v. Resor,* 987 P.2d 146, 148 (Wyo.1999)).

### DISCUSSION

[¶ 10] Appeals to this Court are governed by the Wyoming Rules of Appellate Procedure. W.R.A.P. 1.02. A party's failure to comply with the appellate rules may be the basis "for such action as the appellate court deems appropriate, including but not limited to: refusal to consider the offending party's contentions; assessment of costs; dismissal; and affirmance." W.R.A.P. 1.03. Mother's brief in this case fails to comply with Wyoming Rule of Appellate Procedure 7.01 in a number of respects. In violation of W.R.A.P. 7.01(b), (c), (e)(2), and (f)(2), Mother's brief does not contain a table of contents, a table of authorities, a statement of facts relevant to the issues presented, or a statement of the applicable standard of review.[3] A more fundamental deficiency exists, however, as a result of Mother's failure to present cogent argument or citation to pertinent legal authority, as required by W.R.A.P. 7.01(f)(1). As we recently noted in an appeal brought by a *pro se* litigant, "blatant disregard of our rules of procedure cannot and will not be condoned. When a brief fails to present a valid contention supported by cogent argument or pertinent authority, 'we consistently have refused to consider such cases, whether the brief is by a litigant *pro se* or is filed by counsel.'" *Call v. Town of Thayne,* 2012 WY 149, ¶ 15, 288 P.3d 1214, 1217 (Wyo.2012) (quoting *Berg v. Torrington Livestock Cattle Co.,* 2012 WY 42, ¶ 14, 272 P.3d 963, 966 (Wyo.2012)). The deficiencies in Mother's brief constitute sufficient grounds to summarily affirm the district court's decision. The state of Mother's brief, however, is not the only hindrance to our review in this case.

[¶ 11] In addition to Mother's failure to present adequate argument or authority, our review is impeded by the lack of a transcript of the custody hearing or an adequate substitute in the form of an approved statement of the evidence. We have previously noted that our review is constrained when an appealed order is predicated on testimony and evidence adduced at an unrecorded hearing:

> When this Court does not have a properly authenticated transcript before it, it must accept the trial court's findings of fact upon which it bases any decisions regarding evidentiary issues. *Capshaw v. Schieck,* 2002 WY 54, ¶ 21, 44 P.3d 47, [54] (Wyo.2002). The failure to provide a transcript does not necessarily require dismissal of an appeal, but our review is restricted to those allegations of error not requiring inspection of the transcript. Lacking a transcript, or a substitute for the transcript, the regularity of the trial court's judgment and the competency of the evidence upon which that judgment is based must be presumed. *Stadtfeld v. Stadtfeld,* 920 P.2d 662, 664 (Wyo.1996); *Combs v. Sherry–Combs,* 865 P.2d 50, 55 (Wyo.1993); and *see Wood v. Wood,* 865 P.2d 616 (Wyo. 1993) (dismissing appeal for lack of record, rather than affirming).

*Harshberger v. Harshberger,* 2005 WY 99, ¶ 3, 117 P.3d 1244, 1246–47 (Wyo.2005) (quoting *Burt v. Burt,* 2002 WY 127, ¶ 7, 53 P.3d

---

**3.** We note that the inclusion of a table of contents and a table of authorities "with page references," as required by W.R.A.P. 7.01(b) and (c), was made impossible due to a lack of page numbers in Mother's brief.

101, 103 (Wyo.2002)). Under these circumstances, because we must accept the district court's findings of fact, our review "is effectively limited to determining whether or not an error of law appears on the record." *Harshberger*, ¶ 6, 117 P.3d at 1249. We can discern no such error of law from our review of the record or from the arguments presented in Mother's brief. For the sake of completeness, however, and in consideration of our policy to afford *pro se* litigants "some leniency from the stringent standards applied to formal pleadings drafted by attorneys," we will proceed, briefly, to address Mother's claims. *See Young v. State*, 2002 WY 68, ¶ 9, 46 P.3d 295, 298 (Wyo.2002).

[¶ 12]   In Mother's first and second issues, she makes vague allegations of improper conduct and unfair treatment by the court at the hearings on her petition. The essence of Mother's argument is distilled in the following statement, which is representative of the degree of specificity provided throughout Mother's brief:

> [The trial judge] was hostile toward [Mother] and required [Father] to provide no evidence to support any allegations that he claimed. In fact, [the trial judge's] final thoughts and ruling were based entirely on very brief testimony from [Father] with no facts to support his testimony.

To the extent that Mother's first two issues present legally cognizable claims, we are unable to review them due to the lack of a transcript of the proceedings below.

[¶ 13]   In Mother's third issue, she claims the district court erred in finding that she had violated the Arizona court order permitting visitation with her children only while in the company of her parents. She contends that the Arizona court issued a 2005 order granting her visitation on every other weekend and one night during the week. Mother, however, cites to a document that does not appear in the record. As a result, we are unable to review Mother's claim.

[¶ 14]   In Mother's fourth issue, she contends the district court improperly communicated with Father, *ex parte*, "to notify him of an inconsistency in a document." Mother does not identify the document, explain the significance of that document, or demonstrate how she was harmed by the alleged *ex parte* communication. Further, we find no evidence of an improper contact in the record. Accordingly, we find no merit in Mother's claim.

[¶ 15]   Finally, in Mother's fifth issue, she claims the district court failed to rule on the issues presented in her petition. Although Mother notes that she filed her petition "based on very specific UCCJEA statutes as well as the application of Wyoming statutes on child abuse and abandonment," Mother's petition contains no reference to any Wyoming statute or specific provision of the UCCJEA. In her petition, Mother requested relief in the form of "an order awarding emergency custody" and "an other order or further relief as the Court may determine to be just and proper." The district court denied Mother's request for relief. Mother does not specify the issues on which the district court "failed to rule." Under this issue heading, Mother also claims that the district court erred in failing to appoint a guardian ad litem pursuant to Wyo. Stat. Ann. § 14–2–312. That statute, however, governs petitions for termination of parental rights. Consequently, it has no applicability to this case. We find no merit in Mother's claim.

### CONCLUSION

[¶ 16]   As the proponent of this appeal, it was Mother's burden to provide a complete record for our review. *Steele v. Steele*, 2005 WY 33, ¶ 17, 108 P.3d 844, 851 (Wyo.2005). Mother failed to satisfy this obligation. Consequently, we must presume the regularity of the district court's judgment and the competency of the evidence upon which that judgment was based. *Harshberger*, ¶ 3, 117 P.3d at 1246. Under the limited scope of review allowed in the absence of a hearing transcript in this case, which permits us to address only those errors of law appearing in the record, we find no such error. Additionally, as noted above, Mother's brief fails to adhere to the Wyoming Rules of Appellate Procedure, most notably in its lack of cogent argument or pertinent legal authority. In light of these defects, we affirm the district court's

order denying Mother's petition for modification of custody.