DAVIS, Chief Justice.
*43 [¶1] Rex Rammell, D.V.M., filed a complaint against his former employer, Mountainaire Animal Clinic, P.C., its sole shareholder and president, Paul Zancanella, D.V.M., and its office manager, Vicky Zancanella, collectively Mountainaire, asserting multiple claims including breach of express contract and tortious interference with contract. The district court entered partial summary judgment against Dr. Rammell on all his claims except the breach of express contract claim. Shortly before trial, it dismissed that claim as a sanction for willful obstruction of discovery and fraud upon the court. Dr. Rammell appeals the summary judgment ruling on his tortious interference claim and the dismissal of his breach of express contract claim. We affirm.
ISSUES
[¶2] Dr. Rammell presents six issues on appeal, which we summarize and restate as two issues.[1]
1. Did the district court err in entering summary judgment against Dr. Rammell on his tortious interference claim?
2. Did the district court abuse its discretion in dismissing Dr. Rammell's remaining claims as a sanction for his discovery violations?
[¶3] Mountainaire addresses these two issues and offers two additional issues in response:
1. Does Appellant's false certification concerning the transcript of trial court evidence, and failure to include the transcript in the record, render his notice of appeal jurisdictionally defective, requiring dismissal of this appeal?
2. Should the trial court's decision be summarily affirmed because of Appellant's failure to present a proper record, including a transcript, for this appeal?
FACTS
[¶4] Mountainaire is a veterinary clinic located in Sweetwater County. Dr. Rammell is a veterinarian, and he was hired by Mountainaire pursuant to an employment agreement dated November 14, 2016. The agreement was for a term of one year and provided as follows concerning termination:
This agreement shall terminate immediately upon the occurrence of any of the following events:
A. The denial, refusal, suspension, revocation or restriction of Employee's license to practice veterinary medicine in the State of Wyoming.
B. The death of Employee.
C. The mutual agreement of Employer and Employee, in writing, to termination.
D. Disability of Employee which continues for a period of 30 consecutive days or more.
E. The failure or refusal of Employee to diligently perform the duties of his employment and provisions of this agreement.
F. The end of the term of this agreement.
G. Notwithstanding any of the foregoing, if Employer determines that continued employment of Employee is not desirable for any reason, such employment may be terminated, with or without cause, upon sixty (60) days prior written notice to Employee.
*44 [¶5] On April 19, 2017, Dr. Zancanella, in his capacity as Mountainaire's president, met with Dr. Rammell and terminated his employment. On July 5, 2017, Dr. Rammell filed a complaint against Mountainaire and against Dr. Zancanella and Vicky Zancanella in their individual capacities.[2] The complaint asserted claims for breach of express contract, breach of implied contract, tortious interference with contract, intentional infliction of emotional distress, and negligent infliction of emotional distress. Mountainaire answered and counterclaimed for breach of the employment agreement's non-compete clause and for a $ 10,000 salary advance it had made to Dr. Rammell. It also applied for and was granted a preliminary injunction enjoining Dr. Rammell from directly or indirectly providing services that would compete with Mountainaire within a fifty-mile radius of the clinic.
[¶6] On June 8, 2018, Mountainaire filed two summary judgment motions, one on its $ 10,000 claim for a salary advance refund, and the other against all of Dr. Rammell's claims. The district court granted Mountainaire summary judgment on all claims except a part of Dr. Rammell's breach of implied contract and his breach of express contract claims. Shortly thereafter, it granted Mountainaire's motion to reconsider the breach of implied contract ruling and entered summary judgment in its favor on that claim.[3] That decision left only Dr. Rammell's breach of express contract claim for trial.
[¶7] A few weeks before the August 27, 2018 trial, Mountainaire filed a motion for an order to show cause as to why Dr. Rammell's remaining claim should not be dismissed. In support of its claim for dismissal, Mountainaire alleged that Dr. Rammell flagrantly violated the court's preliminary injunction by offering veterinary services within a few miles of the Mountainaire clinic, that he provided false discovery answers regarding those services, and that he self-issued invalid trial subpoenas. Mountainaire subsequently supplemented the motion with allegations that Dr. Rammell gave false discovery answers concerning income he had earned since the termination of his employment with Mountainaire.
[¶8] On August 15, 2018, the district court held an evidentiary hearing on Mountainaire's motion, and on August 20th, it issued its order ruling on the motion. The court found that Dr. Rammell had issued invalid subpoenas but that he had done so unintentionally, and it did not sanction him for that conduct. The court further found that Dr. Rammell had violated the preliminary injunction, but it concluded that the violation was not grounds for dismissal and otherwise ordered no sanction for it.
[¶9] With respect to discovery responses concerning income he had earned since his dismissal from Mountainaire, the court found the responses ranged from "evasive and misleading to outright false." For this discovery violation, the court dismissed Dr. Rammell's only remaining claim of breach of express contract. The court reasoned (footnote and citations omitted):
Plaintiff's intent to fraudulently conceal this information can be inferred from the circumstances. There is a broad pattern of deceit. And given his obvious self-interest to enlarge his potential damages by concealing mitigation, the inference of deliberate deceit is hard to escape. At the hearing Defendant argued "if he wanted to know if I personally was making money, he should have asked me that question. I mean, he could have easily put, are you - are you, Rex Rammell, receiving any money from veterinary income? And I would have said, yes. But that isn't what he asked." That is what Defendant asked. There is no meaningful, logical difference between that question and Defendant's discovery requests. In fact, Defendant asked the same thing five different ways so as to leave no room for exceptions, evasion or omission.
*45 Plaintiff's degree of culpability is high. Having seen Plaintiff testify and had an opportunity to evaluate his demeanor, the Court believes his true position is exemplified by his most confident and certain testimony that "they were Wyoming Veterinary Center checks. I know it's a technicality, but it - LLCs are legal entities." His attempts to backpedal, such as his testimony that "this all could have come out in the trial, too. I mean, I wasn't trying to hide anything"-not that ambushing the opposing party at trial would excuse withholding evidence-were not credible. And his closing argument, "And to be right honest with you, the Douglas thing, it was a little extra cash. I really didn't think about it" was not supported by credible testimony. He had every opportunity to disclose this information. Instead he concocted a frivolous rationalization why disclosure was not required. Rather than assert his theory of non-discoverability, he deliberately concealed it, apparently confident he could justify himself if it were ever discovered. Since he concealed his withholding of this information, there was no opportunity to warn him that failure to comply with valid discovery requests would result in dismissal.
The degree of actual prejudice to Defendant is also high. On the eve of trial, Defendant fortuitously discovered Plaintiff has hidden evidence of mitigation of his damages, in violation of the Rules of Civil Procedure and three sets of discovery requests. Plaintiff's conduct created a substantial risk that if the jury verdict was in his favor, he would fraudulently recover greater damages than he was entitled to, misusing and interfering with the judicial process.
Finally, no lesser sanction than dismissal will suffice. The judicial process depends on transparency. Compliance with discovery is an essential element of justice. Plaintiff willfully failed to comply with his obligations to produce the evidence of damages sought by Defendant's discovery requests and in bad faith concealed his failure to comply. A less severe sanction would not sufficiently remedy Plaintiff's abusive conduct, as there is no way to ascertain whether he has concealed other crucial evidence, casting doubt on the reliability of any verdict in his favor. And a less severe sanction will not sufficiently punish and deter Plaintiff's dishonest conduct. The Court finds the complaint should be dismissed and judgment entered against Plaintiff under Rule 37 and/or under the inherent power of the Court to sanction fraud on the court.
[¶10] Dr. Rammell thereafter filed a timely notice of appeal to this Court. His notice of appeal contained a certification of transcript request, which stated that "[p]ursuant to W.R.A.P. 2.05(a) and 2.07(a)(4), Appellant, Rex Rammell[,] has ordered and made appropriate arrangements for payment of the transcript to be prepared in this matter." Handwritten next to that typed certification was the statement, "No transcript." In keeping with the handwritten notation, Dr. Rammell did not procure any transcripts for his appeal. He likewise did not indicate whether he intended to submit a statement of evidence or agreed statement, as required by W.R.A.P. 2.05(a).
DISCUSSION
[¶11] We will address first Mountainaire's argument that Dr. Rammell's failure to make a proper certification in compliance with W.R.A.P. 2.05 is a jurisdictional flaw that requires dismissal of his appeal.
A. Jurisdiction
[¶12] Mountainaire moved to dismiss Dr. Rammell's appeal, contending that he falsely certified that there were no transcripts from the proceedings below, and pointing out that his certification was otherwise not in compliance with W.R.A.P. 2.05. Mountainaire argued that Rule 2.05 is jurisdictional, and that the deficiencies in Dr. Rammell's certification therefore mandated dismissal of his appeal. We took Mountainaire's motion under advisement, and we now deny the motion. While we agree that the certification was deficient, we do not agree that Rule 2.05 is jurisdictional, and we decline to dismiss the appeal as a sanction for the deficiency.
*46 [¶13] In response to Mountainaire's assertion that Dr. Rammell, through his handwritten "No transcript" note, falsely certified that there were no transcripts from the proceeding below, Dr. Rammell offered the following explanation:
Appellant followed the example found on the W.R.A.P. page, but upon learning from the Clerk of District Court that transcript ordering was optional, Appellant made a notation that "no transcript" would be ordered, which was his prerogative, thereby making the certification null and void.
[¶14] Although both Dr. Rammell's written alteration and his explanation are misguided and wrong as a matter of law, we will show him the leniency we have the discretion to afford pro se litigants and accept that he did not intentionally misstate the record. See Zeitner v. Shank , 2012 WY 157, ¶ 11, 290 P.3d 180, 184-85 (Wyo. 2012) (quoting Young v. State , 2002 WY 68, ¶ 9, 46 P.3d 295, 298 (Wyo. 2002) (noting our policy to afford pro se litigants "some leniency from the stringent standards applied to formal pleadings drafted by attorneys").) This leaves the question of whether the deficiencies in the certification otherwise mandate dismissal.
[¶15] Rule 2.05 requires:
Concurrently with filing the notice of appeal, appellant must order and either make arrangements satisfactory to the court reporter for the payment for a transcript of the portions of the evidence deemed necessary for the appeal or make application for in forma pauperis status as provided in Rule 2.09. A certificate of compliance with this rule shall be endorsed upon the notice of appeal. If appellant does not intend to order a transcript, the certificate of compliance shall include a statement indicating whether appellant intends to procure a statement of evidence pursuant to Rule 3.03 or an agreed statement pursuant to Rule 3.08.
W.R.A.P. 2.05(a).
[¶16] Dr. Rammell's notice of appeal was timely filed but deficient because it did not contain a clear Rule 2.05 certificate of compliance, and it did not indicate whether he intended to procure either of the specified transcript substitutes. See W.R.A.P. 2.07(a)(4) (requiring notice of appeal to contain Rule 2.05 certificate). Rule 1.03 defines the consequences of failing to comply with our rules of appellate procedure and provides, in relevant part:
The timely filing of a notice of appeal, which complies with Rule 2.07(a), is jurisdictional. The failure to comply with any other rule of appellate procedure, or any order of court, does not affect the validity of the appeal, but is ground only for such action as the appellate court deems appropriate, including but not limited to: refusal to consider the offending party's contentions; assessment of costs; monetary sanctions; award of attorney fees; dismissal; and affirmance.
W.R.A.P. 1.03(a).
[¶17] Consistent with this rule, we have treated defects in an otherwise timely notice of appeal as grounds for sanction but not as jurisdictional. See, e.g. , Armstrong v. Wyo. Dep't of Environmental Quality , 2013 WY 53, ¶ 9, 300 P.3d 850, 851-52 (Wyo. 2013) (imposing sanction of dismissal for numerous rule violations including failure to include Rule 2.05 certificate of compliance in notice of appeal); Finch v. Pomeroy , 2006 WY 24, ¶¶ 2-4, 130 P.3d 437, 437-38 (Wyo. 2006) (summarily affirming where both notice of appeal and briefing failed to comply with rules); see also Cor v. Sinclair Serv. Co. , 2017 WY 116, ¶ 4, 402 P.3d 992, 994 (Wyo. 2017) (defects other than timely filing of a notice of appeal are discretionary grounds for sanction). We therefore disagree with Mountainaire that the defects in Dr. Rammell's notice of appeal mandate dismissal.
[¶18] Mountainaire alternatively asks us to summarily affirm as a sanction for failure to provide a hearing transcript. As it points out, this Court has held that if an appellant fails to designate a record adequate for our review, we will assume the district court's rulings were correct and summarily affirm. Rigdon v. Rigdon , 2018 WY 78, ¶ 15, 421 P.3d 1069, 1074 (Wyo. 2018). At issue is the transcript of the evidentiary hearing, after which the district court entered its sanction of dismissal. That transcript has no bearing on the court's earlier summary judgment *47 ruling on Dr. Rammell's tortious interference claim, and so we decline to summarily affirm on the entire appeal. See Cor , ¶ 4, 402 P.3d at 994 (sanctions for failure to comply with appellate rules are discretionary). To the extent the lack of a transcript affects our consideration of the dismissal order, we will address that deficiency in our discussion of that ruling.
B. Summary Judgment on Tortious Interference Claim
[¶19] W.R.C.P. 56 governs summary judgment. We have described the obligations of the movant and nonmovant.
The party requesting summary judgment bears the initial burden of establishing a prima facie case that no genuine issue of material fact exists and that summary judgment should be granted as a matter of law. W.R.C.P. 56(c) ; Throckmartin v. Century 21 Top Realty , 2010 WY 23, ¶ 12, 226 P.3d 793, 798 (Wyo. 2010). Until the movant has made a prima facie showing that there are no genuine issues of material fact, the nonmovant has no obligation to respond to the motion with materials beyond the pleadings. Id .
Once a prima facie showing is made, the burden shifts to the party opposing the motion to present evidence showing that there are genuine issues of material fact. Boehm v. Cody Cntry. Chamber of Commerce , 748 P.2d 704, 710 (Wyo. 1987) (citing England v. Simmons , 728 P.2d 1137, 1140-41 (Wyo. 1986) ). The party opposing the motion must present specific facts; relying on conclusory statements or mere opinion will not satisfy that burden, nor will relying solely upon allegations and pleadings. Boehm , 748 P.2d at 710. However, the facts presented are considered from the vantage point most favorable to the party opposing the motion, and that party is given the benefit of all favorable inferences that may fairly be drawn from the record. [ Union Pacific R. Co. v. ] Caballo Coal Co. , [2011 WY 24,] ¶ 12, 246 P.3d [867] at 871 [ (Wyo. 2011) ].
Bogdanski v. Budzik , 2018 WY 7, ¶ 18, 408 P.3d 1156, 1160-61 (Wyo. 2018) (quoting Amos v. Lincoln Cty. Sch. Dist. No. 2 , 2015 WY 115, ¶ 15, 359 P.3d 954, 958-59 (Wyo. 2015) ).
[¶20] On appeal, this Court reviews a district court's grant of summary judgment de novo. We have said:
We review a district court's order granting summary judgment de novo and afford no deference to the district court's ruling. Thornock v. PacifiCorp , 2016 WY 93, ¶ 10, 379 P.3d 175, 179 (Wyo. 2016). This Court reviews the same materials and uses the same legal standard as the district court. Id . The record is assessed from the vantage point most favorable to the party opposing the motion ..., and we give a party opposing summary judgment the benefit of all favorable inferences that may fairly be drawn from the record. Id . A material fact is one that would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. Id .
Wyo. Jet Center, LLC v. Jackson Hole Airport Bd. , 2019 WY 6, ¶ 10, 432 P.3d 910, 914 (Wyo. 2019) (quoting Reichert v. Daugherty , 2018 WY 103, ¶ 11, 425 P.3d 990, 994 (Wyo. 2018) ).
[¶21] Dr. Rammell's tortious interference claim was against Dr. Zancanella and Vicky Zancanella. The Zancanellas supported their motion for summary judgment on this claim with their affidavits. Dr. Zancanella's affidavit stated in relevant part:
2. Mountainaire Animal Clinic, P.C. is a Wyoming professional corporation formed by me in 1983, and operated continuously since then. I am its sole shareholder and president. ...
* * * *
4. In my capacity as president of Mountainaire Animal Clinic, P.C., I met with Dr. Rammell and terminated his employment on the morning of April 19, 2017.... Mountainaire Animal Clinic, P.C. has 27 employees, and many customers or animal owners. As president, I have worked very hard since 1983 to build up a competent and customer-oriented staff that works together as an effective team. I have also worked very hard since 1983 to earn the confidence of the animal owners *48 who come to Mountainaire, and to treat our customers and their animals with courtesy, respect, and dignity. Because of Dr. Rammell's actions, the morale of Mountainaire's staff was seriously deteriorating. In my capacity as president of Mountainaire, I was concerned that Mountainaire would lose members of its staff who had been with us for many years. In addition, I was concerned that Mountainaire's customers would lose confidence in Mountainaire and in its ability to competently and courteously take care of their needs. ... By the morning of April 19, 2017, in my capacity as president of Mountainaire Animal Clinic, P.C., I had come to the conclusion that the best interests of Mountainaire required that Dr. Rammell's employment be terminated immediately. I did not want to harm Dr. Rammell in any way, but my paramount concern had to be for the best interests of Mountainaire Animal Clinic, P.C., its staff and customers.
[¶22] The record contains another affidavit of Dr. Zancanella, which was filed in support of Mountainaire's motion for summary judgment on its $ 10,000 salary advance claim.[4] That affidavit included the following statement concerning the decision to terminate Dr. Rammell's employment:
6. In my capacity as president of Mountainaire Animal Clinic, P.C., I met with Dr. Rammell and terminated his employment on the morning of April 19, 2017. Only he and I were present. The decision to terminate Dr. Rammell's employment was solely made by me, as president of Mountainaire Animal Clinic, P.C.
[¶23] Vicky Zancanella's affidavit stated, in relevant part:
1. My name is Vicky Zancanella. I am the same person named in the above-entitled lawsuit as "Vicki Zancanella." I also use the name "Vicky Taylor."
2. I am married to Paul Zancanella, D.V.M. My husband is the sole shareholder and president of Mountainaire Animal Clinic, P.C., and he practices his profession of veterinary medicine through Mountainaire Animal Clinic, P.C., which offers veterinary and related services to the public.
3. At all times relevant to this lawsuit, I was employed by Mountainaire Animal Clinic, P.C. as its office manager.
4. Mountainaire Animal Clinic, P.C. hired Rex Rammell, D.V.M., to work as an employed veterinarian for a one-year term beginning November 14, 2016. Dr. Rammell's employment was terminated by Mountainaire Animal Clinic, P.C. on April 19, 2017.
5. Dr. Zancanella, as president of Mountainaire Animal Clinic, P.C., was the person who hired and the person who terminated Dr. Rammell. I did not make the decision to terminate Dr. Rammell, and I did not terminate Dr. Rammell's employment either individually or on behalf of Mountainaire Animal Clinic, P.C. I was not present at the time Dr. Rammell's employment was terminated.
[¶24] Dr. Rammell filed an opposition to the summary judgment motion, and concerning the tortious interference claim, he asserted that the facts were not undisputed. He alleged that he would prove at trial that he professionally and ethically performed his duties and that were it not for Vicky Zancanella's "rude and improper actions," he would still be working for Mountainaire. Dr. Rammell did not submit affidavits or any other supporting materials with his opposition. See W.R.C.P. 56(c)(1).[5]
[¶25] We agree with Mountainaire that the district court properly entered summary *49 judgment against Dr. Rammell on his interference claim. Tortious interference with contract requires proof of the following elements:
One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.
Gore v. Sherard , 2002 WY 114, ¶ 12, 50 P.3d 705, 710 (Wyo. 2002) (quoting Bear v. Volunteers of America, Wyoming, Inc. , 964 P.2d 1245, 1253 (Wyo. 1998) ).
[¶26] When such a claim is against a co-worker, a plaintiff must show that the co-worker acted outside the scope of his or her employment in inducing the breach and acted for his or her own personal benefit.
In considering a claim of intentional interference with a contract which was brought by one employee against a co-employee, we stated: "An employee of a company is not liable for the company's breach of contract on the theory that the employee induced such breach if he acts in his official capacity, on behalf of the company, and not as an individual for his own advantage." Davenport [v. Epperly ], 744 P.2d [1110] at 1114 [ (Wyo. 1987) ]. In other words, as long as the employee acted within the scope of his authority, his actions in recommending that another employee be discharged may be justified as a matter of law. Dynan v. Rocky Mountain Federal Savings and Loan , 792 P.2d 631, 641 (Wyo.1990).
Bear , 964 P.2d at 1254.
[¶27] With respect to Dr. Rammell's claim against Dr. Zancanella, the evidence was unrefuted that Dr. Zancanella was Mountainaire's president and sole shareholder, and the individual authorized to make Mountainaire's hiring and firing decisions. A claim that Dr. Zancanella tortiously interfered with Dr. Rammell's contract is tantamount to saying Dr. Zancanella induced himself to breach the contract. There was no third-party interference, which made the claim untenable.
[¶28] With respect to Dr. Rammell's claim against Vicky Zancanella, Dr. Rammell failed to refute the following with Rule 56(c) -required materials: that Dr. Zancanella alone made the decision to terminate his employment; that he did so out of concern for Mountainaire, and not for personal reasons; that Vicky Zancanella had no part in the decision; and that the Zancanellas were at all times acting within the scope of their employment. The record on summary judgment supports the district court's ruling, and we affirm it.
C. Dismissal as Sanction for Discovery Abuse
[¶29] We review a district court's ruling imposing discovery violation sanctions for an abuse of discretion.
District courts have discretion in determining the admissibility of evidence, controlling discovery, and selecting the proper means of sanctioning a discovery violation. In re Paternity of HLG , 2016 WY 35, ¶ 7, 368 P.3d 902, 904 (Wyo. 2016) ; Roemmich v. Roemmich , 2010 WY 115, ¶ 22, 238 P.3d 89, 95 (Wyo. 2010). "[A]s long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal." Wise v. Ludlow , 2015 WY 43, ¶ 42, 346 P.3d 1, 12 (Wyo. 2015). The appellant bears the burden of demonstrating the district court abused its discretion. Id .
Downs v. Homax Oil Sales, Inc. , 2018 WY 71, ¶ 19, 421 P.3d 518, 523 (Wyo. 2018).
[¶30] We are limited in our ability to review the district court's sanction of dismissal because Dr. Rammell failed to make the transcript of the evidentiary hearing on sanctions part of the record. We have said that "[t]he appellant bears the responsibility of bringing forth a sufficient record for the Court's review. When he does not, we assume that the district court's orders and rulings were correct, and summarily affirm the district court's decision." Rigdon , ¶ 15, 421 P.3d at 1074 (quoting Burnett v. Burnett , 2017 WY 57, ¶ 5, 394 P.3d 480, 482 (Wyo. 2017) ).
*50 [¶31] Generally speaking, dismissal of an action is an authorized sanction for a discovery violation. W.R.C.P. 37(c)(1)(C). Given that authority, coupled with the constraints on our review created by the limited record, we summarily affirm the district court's dismissal of Dr. Rammell's breach of express contract claim.
[¶32] Affirmed.

Dr. Rammell raises additional issues that we decline to address because they are mooted by our decision to uphold the district court's summary judgment and dismissal rulings. See Williams v. Matheny , 2017 WY 85, ¶ 15, 398 P.3d 521, 527 (Wyo. 2017) (under the mootness doctrine, courts do not rule on issues that will have no impact on the parties). This includes Dr. Rammell's challenges to the district court's finding that he violated the preliminary injunction enjoining him from offering veterinary services within a fifty-mile radius of Mountainaire, his claim that the court erred in ruling that no facts had been pled that would justify consideration of punitive damages, and his claim that the district court erred in denying his motion to compel discovery. With regard to the preliminary injunction violation, the court did not sanction Dr. Rammell for the violation, so our decision would have no practical effect one way or another. With regard to punitive damages, our ruling on the district court's dismissal forecloses any claim for those damages, so a ruling on that point would of course have no impact. With regard to Dr. Rammell's motion to compel, we find nothing in the record to suggest he asked for sanctions, so our ruling again would have no effect.

Dr. Rammell was originally represented by counsel. On March 9, 2018, his attorney moved to withdraw on the ground that Dr. Rammell wished to represent himself, and the district court granted that motion. Dr. Rammell thereafter proceeded pro se .

The ruling on the implied breach of contract claim was not challenged in this appeal.

W.R.C.P. 56 allows a court to consider any materials in the record when ruling on a summary judgment motion. W.R.C.P. 56(c)(3).

Rule 56(c)(1) provides:
A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
W.R.C.P. 56(c)(1).